JAMES PAYNE v. FAIRFIELD HILLS HOSPITAL ET AL.
(13875)

PETERS, C. J., SHEA, GLASS, HULL and BORDEN, Js.

Argued May 31—decision released July 24, 1990

*Salvatore C. DePiano,* with whom was *Edward F. Czepiga II,* for the appellant (plaintiff).

*Carolyn K. Querijero,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Richard J. Lynch* and *Andrea B. Gaines,* for the appellees (named defendant et al.).

*Mary H. Lesser,* deputy assistant state's attorney, for the appellee (defendant Mary M. Galvin).

PETERS, C. J. The sole issue in this appeal is the constitutionality of the 1985 statute creating the psychiatric security review board (PSRB), an agency charged with monitoring the mental condition of persons acquitted of criminal charges by reason of mental disease or defect, with respect to a pre-1985 acquittee. The plaintiff, James Payne, acquitted of murder by reason of mental disease or defect and confined to a mental hospital in 1980, sought to enjoin the PSRB from exercising jurisdiction over him on the ground that the statute creating the board is a "quasi-criminal" statute that violates the ex post facto prohibition in article one, § 10 of the United States constitution.[1] The trial court rendered judgment denying the plaintiff's application for temporary and permanent injunctive relief. This court transferred here, in accordance with Practice Book § 4023, the plaintiff's appeal from this judgment. We now affirm.

The material facts are not in dispute. The plaintiff was found not guilty of murder by reason of mental disease or defect on February 1, 1980. In April, 1980, following an initial confinement for psychiatric evaluation, the trial court ordered the plaintiff to be confined to Fairfield Hills Hospital pursuant to General Statutes § 53a-47 for a period not to exceed twenty-five years.

In April, 1989, the state's attorney for the judicial district in which the plaintiff had been tried requested that the PSRB, established in 1985 by General Statutes § 17-257b, transfer the plaintiff from Fairfield Hills Hospital to another facility. She cited as grounds for her request the failure of Fairfield Hills Hospital properly to monitor the plaintiff, to file timely reports concerning the plaintiff, and to follow suggestions made

[1] Article one, § 10 of the United States constitution provides in relevant part: "No State shall . . . pass any . . . ex post facto Law . . . ."

by the PSRB. In response to her motion, the executive director of the PSRB ordered an independent psychiatric examination of the plaintiff to evaluate his current mental status, psychiatric diagnosis, recommended treatment and level of supervision, and his potential dangerousness.

The plaintiff refused to submit to the PSRB's order. Rather, on May 15, 1989, he filed a verified complaint in the Superior Court contesting the PSRB's jurisdiction over him and seeking temporary and permanent injunctive relief against the state's attorney, the PSRB, and Fairfield Hills Hospital. He challenged the statutory propriety and constitutionality of the actions of the PSRB regarding his confinement, alleging that the actions constituted a deprivation of his rights to due process of law and to the equal protection of the laws.[2]

The defendants moved to dismiss the action on the ground that the plaintiff's failure to exhaust available administrative remedies deprived the court of subject matter jurisdiction. At a subsequent hearing, the parties stipulated to the material facts, requested the court to take judicial notice of the controlling law at the various times at issue, and agreed to join all issues for resolution at one time.

The trial court denied the motion to dismiss, ruling that the plaintiff was not required to submit to the jurisdiction of the PSRB and thus exhaust his administrative remedies before bringing an independent action to challenge the constitutional validity of the PSRB's jurisdiction over him. On the merits, the court held that the challenged statutory provisions, because they are purely procedural in character, do not constitute an ex

---

[2] Although his constitutional complaint originally alleged a deprivation of his rights to due process of law and to equal protection of the laws, in his brief at trial the plaintiff focused on an alleged violation of the prohibition against ex post facto laws.

post facto law within the meaning of the constitutional prohibition. The court further concluded that the statute contemplated a continuing and significant role for the state's attorney in monitoring the mental condition of acquittees, as exercised by the state's attorney in this case.

The plaintiff's appeal raises three issues. Did the trial court correctly rule that: (1) the plaintiff was not required to exhaust administrative remedies before instituting his lawsuit; (2) the act did not violate the constitutional prohibition against ex post facto laws; and (3) the act was properly invoked, on its own terms, to review the plaintiff's psychiatric status? We affirm each of the rulings of the trial court.

I

Because the doctrine requiring exhaustion of administrative remedies implicates subject matter jurisdiction, we first address whether that doctrine requires dismissal of the plaintiff's claims. *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556–57, 529 A.2d 666 (1987). The doctrine of exhaustion fosters the orderly processes of administrative adjudication and judicial review by providing the reviewing court with the benefit of the agency's findings and conclusions. Id., 557. Accordingly, a party who has a statutory right of appeal from a decision of an administrative agency may not bring an independent action to test the very issues that the statutory appeal was designed to test. *Pet* v. *Department of Health Services,* 207 Conn. 346, 353, 542 A.2d 672 (1988); *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979). Even a claim that an administrative agency has exceeded its statutory authority or jurisdiction may be the subject of an administrative appeal. *Cannata* v. *Department of Environmental Protection,* 215 Conn.

616, 577 A.2d 1017 (1990); *Greater Bridgeport Transit District* v. *Local Union 1336*, 211 Conn. 436, 439, 559 A.2d 1113 (1989).

The doctrine of exhaustion is nevertheless subject to certain narrowly circumscribed but well recognized exceptions. One such exception involves a challenge to the constitutionality of the statute or regulation under which an agency operates, rather than to the actions of the board or agency. *LaCroix* v. *Board of Education*, 199 Conn. 70, 79 n.7, 505 A.2d 1233 (1986); *Friedson* v. *Westport*, 181 Conn. 230, 233, 435 A.2d 17 (1980). Although the mere allegation of a constitutional violation will not necessarily excuse a plaintiff's failure to exhaust available administrative remedies; *Pet* v. *Department of Health Services*, supra, 354–56; *Sullivan* v. *State*, 189 Cônn. 550, 553–54, 457 A.2d 304 (1983); we have permitted, under special circumstances, a collateral constitutional challenge to the action of an administrative agency even in the absence of a direct appeal. *LaCroix* v. *Board of Education*, supra, 80; *Connecticut Light & Power Co.* v. *Norwalk*, 179 Conn. 111, 117, 425 A.2d 576 (1979); see also *Greater Bridgeport Transit District* v. *Local Union 1336*, supra, 440 n.2.[3]

In the present case, the plaintiff concedes that General Statutes § 17-257w (c)[4] expressly subjects all

[3] We have also recognized an exception to the exhaustion requirement where recourse to the administrative process is futile or provides an inadequate remedy. *Pet* v. *Department of Health Services*, 207 Conn. 346, 353, 542 A.2d 672 (1988); *Greenwich* v. *Liquor Control Commission*, 191 Conn. 528, 541–42, 469 A.2d 382 (1983). An administrative remedy is futile or inadequate if the agency lacks authority to grant the requested relief. *Cannata* v. *Department of Environmental Protection*, 215 Conn. 616, 577 A.2d 1017 (1990). Federal courts have frequently held that an administrative agency lacks the authority to declare its own enabling act unconstitutional. See, e.g., *Weinberger* v. *Salfi*, 422 U.S. 749, 764–65, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975); *Finnerty* v. *Cowen*, 508 F.2d 979, 982 (2d Cir. 1974).

[4] General Statutes § 17-257w (c) provides in relevant part: "All persons confined as a danger to themselves or others pursuant to section 53a-47

acquittees in his situation to the jurisdiction of the PSRB. He has alleged, however, that the statute cannot be applied to him because it imposes conditions on his confinement more onerous than those in effect at the time of his trial and is thus a violation of the federal constitutional prohibition against ex post facto laws. This is therefore not a case in which an administrative agency should be called upon to determine particular facts or to exercise its discretion. See *McKart* v. *United States,* 395 U.S. 185, 193–95, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969); *Finnerty* v. *Cowen,* 508 F.2d 979, 982 (2d Cir. 1974). The plaintiff's claim is in effect a plenary challenge to the constitutionality of the statute as applied to all acquittees in the plaintiff's position. He asserts that it is constitutionally inappropriate for the PSRB to exercise any role in his continued psychiatric supervision.

The plaintiff's challenge to the jurisdiction of the PSRB is readily distinguishable from the somewhat similar claim that we recently rejected in *Cannata* v. *Department of Environmental Protection,* supra. In *Cannata,* the plaintiffs argued that they should not be compelled to submit to the jurisdiction of the department of environmental protection for exhaustion of administrative remedies because their proposed use of land did not constitute an obstruction or encroachment within the meaning of the statute on which such jurisdiction would depend. We concluded, to the contrary, that the agency possessed technical expertise in evaluating particular land uses, and that its determinations would provide the necessary factual record for any subsequent judicial review. We noted, in addition, that the plaintiffs in *Cannata* had failed to assert any constitutional claims on appeal.

of the general statutes, Revision of 1958, revised to January 1, 1985, shall be deemed committed to the jurisdiction of the board on July 1, 1985, and for the remainder of the term of commitment."

In the present case, in contrast, the plaintiff does not dispute the statutory authority of the PSRB to assume jurisdiction over him; rather, he asserts that the statute itself is unconstitutional as applied to him. The PSRB's expertise in making factual determinations regarding the mental condition of acquittees is therefore of no use in evaluating the plaintiff's legal claim. In view of the substantial constitutional question raised by this claim, the trial court properly concluded that it possessed jurisdiction to entertain such a challenge without first requiring the plaintiff to pursue an administrative remedy. See *LaCroix* v. *Board of Education,* supra.

## II

The plaintiff acquittee asserts that two aspects of the act establishing the PSRB are unconstitutional as applied to him: first, the act shifts to the acquittee the burden of proving that he is not mentally ill or dangerous in order to secure his discharge; General Statutes § 17-257n (f); and second, it requires the superintendent of any mental hospital in which the acquittee is confined to seek an authorizing order from the PSRB in order to release him on a temporary leave. General Statutes § 17-257h. The plaintiff argues that these procedural changes constitute an ex post facto law because they retroactively impose more burdensome procedures than those in effect in 1980,[5] when he decided to plead not guilty by reason of mental disease or defect.

---

[5] In 1980, General Statutes (Rev. to 1979) § 53a-47 governed the confinement of persons acquitted of crimes by reason of mental disease or defect. Under its terms, the plaintiff could have been confined more than twenty-five years only if the state, within ninety days of the end of that term, had petitioned the court for an order of continued confinement and had proved, by a preponderance of the evidence, that continued confinement was warranted because the plaintiff was mentally ill to the extent that his release would pose a danger to himself or others. The plaintiff could have been released at any time prior to the statutory maximum if the super-

As the trial court correctly observed, changes in procedural law do not ordinarily give rise to violations of the prohibition against ex post facto laws in article one, § 10 of the United States constitution. "[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Beazell* v. *Ohio,* 269 U.S. 167, 171, 46 S. Ct. 68, 70 L. Ed. 216 (1925); see also *Collins* v. *Youngblood,* U.S. , 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). Moreover, the ex post facto clause prohibits a state only from passing a law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed . . . ." *Cummings* v. *Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L. Ed. 356 (1867), quoted in *Weaver* v. *Graham,* 450 U.S. 24, 28, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

As a general matter, the confinement of insanity acquittees, although resulting initially from an adjudication in the criminal justice system, is not "punishment" for a crime. "The purpose of commitment

intendent of the facility in which he was confined had certified to the court that he was no longer mentally ill or dangerous, unless the state could establish continuing dangerousness by a preponderance of the evidence. Section 53a-47 was repealed by Public Acts 1985, No. 85-506, § 31, the act in which the legislature created the PSRB. The 1985 act, codified at General Statutes §§ 17-257a through 17-257w, empowered the PSRB to review on a regular basis the mental condition of all persons confined to mental health facilities after acquittal of criminal charges by reason of mental disease or defect. The 1985 act also empowered the PSRB to grant temporary leaves and conditional release, to monitor the mental condition of acquittees on conditional release, and to make recommendations to the court regarding discharge from custody. The act placed on the acquittee the burden of proving fitness, by a preponderance of the evidence, for any order of less restrictive confinement or discharge. Finally, the act expressly conferred on the PSRB jurisdiction over all acquittees confined prior to its effective date.

following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous. . . . As he was not convicted, he may not be punished. His confinement rests on his continuing illness and dangerousness." *Jones* v. *United States,* 463 U.S. 354, 368–69, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). This court recognized the same principle in *Franklin* v. *Berger,* 211 Conn. 591, 560 A.2d 444 (1989), when we held that an insanity acquittee was not entitled to credit against his period of confinement for time served in jail prior to his trial, although persons convicted of crimes and sentenced to prison would receive such credit, because the only determinant of the length of an acquittee's confinement is his mental health. This plaintiff therefore has no constitutional grounds to object to the order of the PSRB requiring him to submit to a psychiatric examination to reassess the terms of his present confinement.

The plaintiff's other ex post facto claims are purely speculative. Since the effective date of the act, the plaintiff has sought neither a temporary leave nor his permanent discharge. We do not resolve questions of the constitutional validity of statutes unless the case presents both the practical necessity for such a resolution and a sufficient factual background for informed adjudication. See *Lehrer* v. *Davis,* 214 Conn. 232, 235, 571 A.2d 691 (1990); *State* v. *Madera,* 198 Conn. 92, 105, 503 A.2d 136 (1985). "A party mounting a constitutional challenge to the validity of a statute must provide an adequate factual record in order to meet its burden of demonstrating the statute's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothet-

ical set of facts as yet unproven." *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 486 (1987).

The plaintiff argues, however, that if these two aspects of the act may be unconstitutional as applied to him, then the PSRB created by the same act has no legitimate constitutional authority over any aspect of his confinement. The plaintiff's contention that the constitutional invalidity of one provision of a statute renders the entire statute unconstitutional is baseless. The legislature has expressed its intention, by General Statutes § 1-3,[6] that courts should presume the severability of the provisions and the applications of statutes. To overcome the presumption of severability, a party must show that the portion declared invalid is "so mutually connected and dependent on the remainder of the statute as to indicate an intent that they should stand or fall together" and that the interdependence is such that the legislature would not have adopted the statute without the invalid portion. *State* v. *Menillo,* 171 Conn. 141, 145, 368 A.2d 136 (1976).

Not surprisingly, the plaintiff has not attempted to make such a showing here. The legislature prefaced the section making the statute applicable to all acquittees with the words "[u]nless otherwise prohibited by law." General Statutes § 17-257w (a).[7] This language strongly

---

[6] General Statutes § 1-3 provides: "VALIDITY OF SEPARATE PROVISIONS OF ACTS. If any provision of any act passed by the general assembly or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of such act."

[7] General Statutes § 17-257w (a) provides in relevant part: "Unless otherwise prohibited by law, sections 17-257a to 17-257v, inclusive, apply . . . (2) to any person who, prior to July 1, 1985, was found not guilty by reason of mental disease or defect, or guilty but not criminally responsible, pursuant to section 53a-13, and who, on July 1, 1985, is confined, temporarily confined, or otherwise subject to court supervision pursuant to section 53a-47 of the general statutes, Revision of 1958, revised to January 1, 1985."

suggests that the legislature intended the statute to be applied to the full extent permitted by constitutional or statutory restrictions. We conclude, therefore, that even a successful constitutional challenge to the shift in burden of proof or to the additional procedural requirements for temporary release would not inevitably render the general jurisdiction of the PSRB similarly unconstitutional, and that there is no present impediment to the exercise of the PSRB's statutory authority over the plaintiff.

## III

Having concluded that the plaintiff's constitutional challenge to the act establishing the PSRB is in large part premature and that the challenged provisions are in any event severable, we now turn to his statutory argument. The plaintiff maintains that neither the PSRB nor the state's attorney has the statutory authority to compel the plaintiff to undergo an independent psychiatric examination unless the plaintiff requests a change in his status. We disagree.

The language of General Statutes § 17-257f[8] plainly refutes the plaintiff's claim with regard to the PSRB. This statute requires the PSRB to hold a hearing to review the mental condition of an acquittee not less than every two years, and General Statutes § 17-257q[9] expressly authorizes the PSRB, the acquittee and the

[8] General Statutes § 17-257f provides: "PERIODIC REVIEW BY BOARD. The board shall conduct a hearing and review the status of the acquittee not less than once every two years. At such hearing the board shall make a finding and act pursuant to section 17-257e."

General Statutes § 17-257e in turn provides in relevant part that "[a]t any hearing before the board considering the discharge, conditional release or confinement of the acquittee . . . the board shall make a finding as to the mental condition of the acquittee . . . ."

[9] General Statutes § 17-257q provides in relevant part: "(a) Prior to any hearing by the board concerning the discharge, conditional release or confinement of the acquittee, the board, acquittee and state's attorney may each choose a psychiatrist or psychologist to examine the acquittee. The

state's attorney each to choose a psychiatrist to examine the acquittee prior to any hearing by the PSRB.

The authority of the state's attorney to request reevaluation of the acquittee's mental condition is similarly evident throughout the act. The PSRB must furnish to the state's attorney copies of all reports received regarding an acquittee's mental condition; see, e.g., General Statutes §§ 17-257g, 17-257i, 17-257k, 17-257*l* and 17-257m; and must give the state's attorney written notice prior to any hearing. See, e.g., General Statutes §§ 17-257i, 17-257*l* and 17-257m. The act refers to the state's attorney as an "interested party" in proceedings before the PSRB regarding the mental condition of an acquittee; see, e.g., General Statutes § 17-257q (b); and expressly authorizes the state's attorney to furnish information to the PSRB about any conditionally released acquittee. General Statutes § 17-257o.

In the present case, the plaintiff challenged the authority of the state's attorney to request the plaintiff's transfer to another institution. The effect of the request, however, was merely to put into motion a review by the PSRB of the appropriateness of the plaintiff's present confinement. The act plainly grants such authority to the PSRB and just as plainly authorizes the participation of the state's attorney in the reviewing process. The plaintiff's statutory claim is therefore unavailing.

The judgment is affirmed.

In this opinion the other justices concurred.

---

results of the examination shall be in writing and filed with the board, and shall include, but need not be limited to, an opinion as to whether the acquittee is mentally ill or mentally retarded to the extent that his release would constitute a danger to himself or others and whether the acquittee could be adequately controlled with treatment as a condition of release. To facilitate examination of the acquittee, the board may order him placed in the temporary custody of any hospital for mental illness or other suitable facility or placed with the commissioner of mental retardation."