[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This a sequel to Ghent v. Waterbury Planning Commission,219 Conn. 511 (1991). It features the same players. The scene is the same. Again, the story line focuses on 5.6 of the Waterbury Land Subdivision Regulations.
Nichols Realty again has applied for approval of a subdivision located on the same land involved in Ghent. This proposed subdivision contains two dead-end roads, namely, "Cobblestone Court" and "Shadybrook Lane." See Exhibit C, Return of Record [104]. On December 9, 1991, the defendant commission granted conditional approval.
Plaintiff, Laurine H. Ghent, claiming to be the owner "of land which abuts the approved subject property," filed this timely appeal. Complaint, 3. Defendants do not contest plaintiff's status as an "aggrieved person." Evidence was presented of her ownership of adjoining land. Plaintiff owns land which abuts land owned by the defendant, Nichols Realty. The proposed, and commission approved, subdivision lies on part of this land. The court finds that the plaintiff is the owner of "land that abuts or is within a radius of 100 feet of a[ny] portion of the land involved in the decision of the board." C.G.S. 8-8 (1). Caltabiano v. Planning Zoning Commission,211 Conn. 662 (1989). By statute, C.G.S. 8-8, plaintiff is an "aggrieved" person. The court so finds.
The issue here is narrow. Plaintiff claims that 5.6, as gutted by Ghent, prohibits all dead-end streets in subdivisions.
Nichols Realty, the defendant with a real interest in the outcome, contends that Ghent left 5.6 an empty carcass, i.e. eliminated it and its prohibition against dead-end streets from the regulations.
Again the defendant commission has not supplied a transcript of its proceeding. It has returned the minutes of its December 9, 1991 meeting.
The minutes show that the City Planner reported the court's invalidation of the earlier subdivision approval. The City Planner recommended approval of the present application. The minutes do not disclose any discussion of the application by the commission. The minutes do report the vote on the application was unanimous. See Minutes, City Plan Commission Regular Meeting Monday, December 9, 1991. Exhibit D, pp. 5-6, Return of Record CT Page 10086 [104]
Section 5.6 of the defendant commission's regulations provides:
"SECTION 5.6 — DEAD-END STREETS
 "Dead-end streets will be approved by the Commission only when the Commission feels that the extension of the street is impractical.
 "Streets designed to have one end permanently closed shall not exceed 750 feet in length and shall provide in each case a turnaround roadway with a minimum radius of 40 feet to the street line. Dead-end streets longer than 750 feet are not permitted unless prior approval is given by the City Plan Commission." Land Subdivision Regulations of the City Plan Commission, City of Waterbury, Connecticut, Exhibit H, Return of Record [104].
The Supreme Court carefully defined the issues before it and its holding:
 "The issues presented are: (1) . . .; (2) are the commission's regulations authorizing dead-end streets when through streets are "impractical" so lacking in precision that they furnish an inadequate standard by which to guide the commission and the public; and (3) does the phrase in the commission's regulations that "Waivers may be granted in accordance with Section 8-26
of the [G]eneral [S]tatutes" provide a legally adequate description of the circumstances under which the commission may waive the requirements of its own regulations." 219 Conn. @ 512-3.
 "We view the word "impractical," as used in 5.6, . . . as being so vague and imprecise that neither the commission nor the public is fairly apprised of the circumstances under which a dead-end street would be permitted." 219 Conn. @ 518.
 "We agree, therefore, with the trial court's conclusion that the commission's regulations "are totally void of standards to measure the conditions under which a waiver of the CT Page 10087 dead-end road length limitation would be appropriate." 219 Conn. @ 519.
The Supreme Court held that the standards for waiving the dead-end street prohibition were invalid. Therefore there is no way to get a waiver of the prohibition against dead-end streets. Ghent eliminated avenues for getting around that prohibition.
The issue here is whether 5.6's prohibition against dead-end streets has been obliterated by Ghent, or has continuing vitality.
The question is one of severability.
The Supreme Court has addressed the question of severability.
 "The plaintiff's contention that the constitutional invalidity of one provision of a statute renders the entire statute unconstitutional is baseless. The legislature has expressed its intention, by General Statutes 1-3, that courts should presume the severability of the provisions and the applications of statutes. To overcome the presumption of severability, a party must show that the portion declared invalid is `so mutually connected and dependent on the remainder of the statute as to indicate an intent that they should stand or fall together' and that the interdependence is such that the legislature would not have adopted the statute without the invalid portion." [Footnote omitted] State v. Menillo, 171 Conn. 141, 145, 368 A.2d 136 (1936). Payne v. Fairfield Hills Hospital, 215 Conn. 675, 685
(1990).
See also 2 Sutherland, Statutory Construction, 44.01 — 44.20, pp. 479-537; 6 McQuillin, Municipal Corporations 3d. Ed. Rev., 20.65, p. 213.
The same canons of construction are applicable to municipal ordinances. Duplin v. Shiels, Inc., 165 Conn. 396, 398-9 (1973).
The dominant purpose of 5.6 is to prohibit dead-end streets and the problems attendant to them; it had provisions for waiver of the prohibition. Would its enactors have wanted to CT Page 10088 prohibit dead-end streets if there were no waiver mechanism? The court answers that question in the affirmative. Its enactors included 8.4 in the regulations.
"SECTION 8.4 — VALIDITY
 "If any section, paragraph, sentence, clause or phrase of these regulations shall for any reason be held invalid or unconstitutional by a decree or decision of any court or competent jurisdiction, such decree or decision shall not affect or impair the validity of any other section or remaining portion of these regulations." Land Subdivision Regulations of the City Plan Commission, City of Waterbury, Connecticut, Exhibit H, Return of Record [104].
The regulation, 8.4, provides that Ghent's invalidation of the waiver provisions "shall not affect or impair the validity of any other section or remaining portion of the regulations." The dead-end street prohibition remains in effect.
"`It is axiomatic that a statute [or regulation] declared [or invalid] is unenforceable, but is not repealed or abolished.' State v. Menillo, 171 Conn. 141, 147368 A.2d 136 (1974)." Bakelaar v. West Haven, 193 Conn. 59, 68, fn. 6 (1984).
Fairly read, the language of 5.6, in the first instance, prohibits dead-end streets. Its authors then attempted to permit a waiver of the blanket prohibition in certain circumstances by means of the now rejected "impractical" and "prior approval" standards.
The law is clear. "The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. Langbein v. Planning Board, 145 Conn. 674,679, 146 A.2d 412 [1958]." Reed v. Planning Zoning Commission, 208 Conn. 431, 433 (1988). Nichols Realty concludes "the subdivision complies with the lawfully enforceable regulations. Section 5.6, having been rendered invalid and unenforceable, has been severed from the land Subdivision Regulation of The City of Waterbury." BRIEF OF DEFENDANT APPLICANT, NICHOLS REALTY, p. 6. [107] If that be true now, it was true when the Supreme Court decided Ghent. If Ghent rendered CT Page 10089 5.6 totally invalid and unenforceable — severed it completely from the subdivision regulations, Nichols Realty's subdivision application which was the subject of Ghent conformed to all the valid regulations. The Supreme Court surely would have held that approval of the subdivision was in order. But the Supreme Court did not. It held the subdivision application did not conform to the regulations, i.e. 5.6's dead-end street prohibition remains in the defendant's regulations.
The court holds that the principal part of 5.6 remains in full force and effect, dead-end streets are prohibited; there are now no valid provisions for waiving that prohibition. In short, Ghent did not eliminate 5.6 in toto and/or its prohibition of dead-end streets; Ghent did negate 5.6's avenues for gaining an exception to the blanket prohibition of dead-end streets.
Defendant Nichols appears to contend that 5.6 permits dead-end streets less than 750 feet in length. It appears to rely on the sentence in 5.6 that reads: "Streets designed to have one end permanently closed shall not exceed 750 feet in length and shall provide in each case a turnaround roadway with a minimum radius of 40 feet to the street line." Cobblestone Court and Shadybrook Lane both are less than 750 feet in length. The subdivision map says of Shadybrook Lane, "Temporary cul-de-sac easement outside of 50' R.O.W. to be terminated upon extension of Shadybrook Lane. Remaining land to revert to adjacent lot owners." Exhibit C, Return of Record [104]. Nichols Realty owns lands immediately south of the subject parcel; it is obvious that Shadybrook Lane will be used to service that land at some time in the future. Shadybrook Lane is not a street "designed to have one end permanently closed."
Furthermore, under 5.6, even dead-end streets less than 750 feet in length "will be approved by the Commission only when the Commission feels that the extension of the street is impractical." Since the commission can no longer make the finding of impracticality, all dead-end streets are barred. The inclusion in the application of a dead-end street, even one shorter than 750 feet, now, post-Ghent, necessitates disapproval of the subdivision application.
Defendant, Nichols Realty claims —
 "Requiring the Defendant applicant to comply with a regulation that is incapable of being complied with CT Page 10090 is patently unjust. Compliance cannot be achieved without acceptable standards in place. Unless Section 5.6 is revised pursuant to criteria established by the Supreme Court it is unenforceable as to and against all parties, such unilateral enforcement would constitute an unconstitutional taking against all parties, not just the Defendant applicant. Any other interpretation is illogical and such unilateral enforcement would constitute an unconstitutional taking by effectively precluding the applicant from the use and enjoyment of its land." BRIEF OF DEFENDANT APPLICANT, NICHOLS REALTY, p. 6. [107]
Nichols Realty has presented no authority for this claim.
It's not clear what Nichols Realty expects the court to do. Of course, it wants the court to uphold the defendant commission's approval of the subdivision application. Evidence was presented intended to show that if this application were not approved, the land owned by Nichols Realty would have no useful purpose and thus valueless. According to Nichols Realty, this "would constitute an unconstitutional taking."
This is an appeal brought to this court by the plaintiff Ghent pursuant to C.G.S. 8-8 and 8-28. The appeal challenges the commission's approval of the defendant Nichols Realty's subdivision application. This court holds that the present application does not comply with the subdivision regulations. The "taking claim" is raised, not by the plaintiff/appellant, but by the defendant, Nichols Realty. Nichols Realty has not appealed the action of the defendant commission. It could not; it was not aggrieved by the defendant commission's action.
Nichols Realty's unconstitutional taking claim has no place in this statutory appeal. The court could not negate 5.6's dead-end street prohibition because of the claimed "unconstitutional taking."
Even if the court were to find that the Nichols Realty land is essentially valueless if this application is rejected (a conclusion the court does not make), this court could not, in the context of this appeal, waive, override, or negate the requirements of the subdivision regulations because of the claimed unconstitutional taking. The court could not negate 5.6's dead-end street prohibition because of the claimed CT Page 10091 "unconstitutional taking."
Defendant Nichols Realty claim is akin to a regulatory taking claim. It differs because this court's action, not the defendant planning commission's, supposedly has rendered the property valueless.
The Supreme Court has addressed regulatory taking claims.
 "As we have recently reiterated, however, the plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. Port Clinton Associates v. Board of Selectmen, 217 Conn. 588, 604, 587 A.2d 126 (1991); see also McDonald, Sommer Frates v. Yolo County, 477 U.S. 340, 348-49, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); Agins v. Tiburon, 477 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Williamson Planning Commission v. Hamilton Bank, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Hodel v. Virginia Surface Mining Reclamation Assn., 452 U.S. 264, 297, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 553, 525 A.2d 940 (1987)." Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 415 (1991).
See also, Port Clinton Associates v. Board of Selectmen,217 Conn. 588 (1991).
The requisite finality has not been established. This court has no idea what the defendant planning commission will do faced with the fact that the dead-end street prohibition remains a part of its subdivision regulations. There may be a use or uses for the property other than the residential subdivision set forth in the present application.
A statutory appeal from the action of a planning commission's approval of a subdivision does not provide the forum for the successful applicant before the planning commission to raise and resolve an alleged unconstitutional taking claim.
CT Page 10092 Plaintiff's appeal is sustained.
Parker, J.
Ghent