WILLIAM J. WARREN *v.* COMMISSIONER OF MENTAL HEALTH ET AL.
(14140)

O'Connell, Spear and Hennessy, Js.

Considered October 1—officially released November 26, 1996

*John R. Williams*, for the appellant (plaintiff).

*Patricia A. Gerner*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (named defendant).

*John A. East III*, deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (defendant Michael Dearington).

SPEAR, J. The plaintiff in this declaratory judgment action appeals from the judgment of the trial court rendered in the defendants' favor. In *Warren* v. *Commissioner of Mental Health*, 41 Conn. App. 221, 675 A.2d 6 (1996), we remanded the case to the trial court to determine whether reasonable notice was afforded to all parties having an interest in this matter. The trial court found that reasonable notice was given and we now reach the merits of the plaintiff's appeal. The sole issue on appeal is whether General Statutes §§ 17a-580 through 17a-603, as applied to the plaintiff, violate the ex post facto clause of the United States constitution.[1]

[1] The constitution of the United States, article one, § 10, provides: "No state shall . . . pass any bill of attainder [or] ex post facto law . . . ."

The relevant facts are set forth in *Warren* v. *Commissioner of Mental Health,* supra, 41 Conn. App. 222–23. "The plaintiff was arrested on July 5, 1971, and charged with the crime of murder [which was committed on that same day]. On February 27, 1974, a jury found the plaintiff not guilty by reason of insanity. The plaintiff, pursuant to General Statutes (Rev. to 1972) § 53a-47 (now §§ 17a-580 through 17a-603), was committed to the custody of the defendant commissioner of mental health for an indefinite period of time not to exceed twenty-five years. Section 53a-47, which took effect approximately three months after the commission of the criminal act, was the first statute that treated insanity 'acquittees'[2] differently from persons who were otherwise involuntarily committed because of mental illness.

"The plaintiff brought this declaratory judgment action requesting that the trial court declare that §§ 17a-580 through 17a-603, as applied to him, are ex post facto laws in violation of the United States constitution. The plaintiff takes specific exception to the current statutory provisions that require acquittees seeking release to prove, by a preponderance of the evidence, that they are eligible for release from psychiatric confinement. The statute in effect on the date of the plaintiff's criminal act did not place such a burden on acquittees. The plaintiff also sought an injunction prohibiting the defendants from confining the plaintiff, or placing conditions on his release, pursuant to §§ 17a-580 through 17a-603.

"The trial court rejected the arguments of the plaintiff and rendered judgment in favor of the defendants. The trial court found that the statutory changes were procedural rather than substantive and thus concluded that 'neither the change of the standard [of proof] nor the

---

[2] General Statutes § 17a-580 (1) defines "acquittee" as "any person found not guilty by reason of mental illness or defect . . . ."

shift in burden [constituted] an ex post facto law as applied to [the plaintiff].' This appeal by the plaintiff followed."

The plaintiff claims that the trial court improperly found that §§ 17a-580 through 17a-603, as applied to him, do not violate the ex post facto clause of article one, § 10, of the United States constitution. He asserts that the statute in effect on the day the crime was committed should govern his confinement and release, not the current statutory scheme. We disagree.

The plaintiff claims that if he had been committed pursuant to the statutes in effect on the day he committed the murder, General Statutes (Rev. to 1968) § 17-178 et seq., the Probate Court would have governed his confinement and release, and would have applied the same standards for both insanity acquittees and involuntary civil committees.[3] He claims that under the current statutes, he is required to prove by a preponderance of the evidence that he is eligible for release, whereas, as of the day of the murder, no such burden was imposed on insanity acquittees.[4] Thus, he asserts that the changes in the law are punitive and constitute an ex post facto law.

---

[3] General Statutes (Rev. to 1968) §§ 17-176 through 17-205a were in effect on the date of the murder  Section 17-178 provided in relevant part: "If, [after a] hearing, the [probate] court finds that the person complained of is mentally ill and a fit subject for treatment in a hospital for mental illness or that he ought to be confined, it shall make an order for his commitment to a hospital for mental illness to be named in such order, there to be confined while such mental illness continues or until he is discharged in due course of law . . . . Such court may, after a hearing, when it finds it to be for the best interest of the person so committed, revoke such order of commitment." At the time of the murder, there was no statutorily defined standard of proof.

[4] General Statutes (Rev. to 1972) § 53a-47 (c), the statute under which the plaintiff was committed, went into effect on October 1, 1971, three months after the date of the murder. It provided in pertinent part that "[u]pon certification by the superintendent of the hospital or institution that, in his opinion, such person is no longer mentally ill to the extent that his release would constitute a danger to himself or others, the court may order the

It is well established that "the constitutional prohibition on ex post facto laws applie[s] only to penal statutes which disadvantage the offender affected by them." *Collins* v. *Youngblood*, 497 U.S. 37, 41, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). "[C]hanges in procedural law do not ordinarily give rise to violations of the prohibition against ex post facto laws . . . . '[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' *Beazell* v. *Ohio*, 269 U.S. 167, 171, 46 S. Ct. 68, 70 L. Ed. 216 (1925); see also *Collins* v. *Youngblood*, [supra, 37]. Moreover, the ex post facto clause prohibits a state only from passing a law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed . . . .' *Cummings* v. *Missouri*, 71 U.S. (4 Wall.) 277, 325–26, 18 L. Ed. 356 (1867), quoted in *Weaver* v. *Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)."[5] *Payne* v. *Fairfield Hills Hospital*, 215 Conn. 675, 683, 578 A.2d 1025 (1990).

release of the person confined at the expiration of thirty days from the time such certificate is filed. (2) At the time such certificate is filed with the court, a copy shall be furnished to the state's attorney or prosecutor who may request a hearing as to whether such person should be released. At such hearing, evidence of mental condition may be submitted. The confined person shall be released unless the state establishes by a preponderance of the evidence that such person is, at the time of hearing, mentally ill to the extent that his release would constitute a danger to himself or others. . . ."

Under the current statutory scheme, General Statutes §§ 17a-580 through 17a-603, the plaintiff's confinement and release is governed by the psychiatric security review board. In order to secure his release from confinement, the plaintiff "shall have the burden of proving by a preponderance of the evidence that [he] is a person who should be discharged." General Statutes § 17a-593 (f).

[5] The ex post facto clause also prohibits any law "which deprives one charged with crime of any defense available according to law at the time when the act was committed." (Internal quotation marks omitted.) *Dobbert* v. *Florida*, 432 U.S. 282, 292, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977), quoting *Beazell* v. *Ohio*, supra, 269 U.S. 169–70. The plaintiff in this case does not claim that he is being deprived of a defense previously available to him.

The defendants argue that the statutory scheme at issue is not subject to an ex post facto analysis because the plaintiff cannot establish either that he is being punished for conduct that was previously lawful, or that his punishment was increased. We agree.

Although the plaintiff was confined pursuant to an adjudication in the criminal justice system, our Supreme Court has held that "the confinement of insanity acquittees . . . is not 'punishment' for a crime." Id., 684; *Jones* v. *United States*, 463 U.S. 354, 368–69, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). In *Payne* v. *Fairfield Hills Hospital*, supra, 215 Conn. 682, the plaintiff challenged the constitutionality of General Statutes § 17-257b, claiming that changes in the law, as applied to him, violated the ex post facto clause because it retroactively "impose[d] more burdensome procedures than those in effect . . . when he [was confined]." Payne based his challenge on two changes in the law: (1) it required the superintendent of the hospital in which he was confined to seek an order from the psychiatric security review board to release him on temporary leave, and (2) the statute shifted the burden of proving that he is not mentally ill or dangerous to the acquittee. Id. The court held that the shift of authority from the Probate Court to the psychiatric security review board was not a violation of the ex post facto clause, but found that Payne's claims relating to the shift of the burden of proof were purely speculative and declined to decide them.[6] Nevertheless, the court noted that "[t]he purpose of commitment following an insanity acquittal, like that

---

[6] The court found that Payne's claim regarding the change in the burden of proof was speculative because "[s]ince the effective date of the act, [Payne] has sought neither a temporary leave nor his permanent discharge." *Payne* v. *Fairfield Hills Hospital*, supra, 215 Conn. 684. In this case, the record does not indicate whether the plaintiff has sought release under the current statutory scheme, although at oral argument, his counsel asserted that he had. The plaintiff filed this declaratory judgment action in order to determine which standard of proof will govern his future requests for release.

of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous. . . . As he was not convicted, he may not be punished.' " Id., 683–84; see also *Franklin* v. *Berger*, 211 Conn. 591, 560 A.2d 444 (1989) (insanity acquittee not entitled to credit against period of confinement for pretrial jail time served, although persons convicted of crimes and sentenced to prison would receive credit, because sole factor in length of confinement is acquittee's mental health).

Because the plaintiff cannot demonstrate that his confinement is "punishment," we conclude that the shift of the burden of proof to him to demonstrate that he is suitable for release does not constitute an ex post facto law.

The judgment is affirmed.

In this opinion the other judges concurred.