[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RESPONDENT'S MOTION TO DISMISS
 FACTS
The respondent has moved to dismiss the second count of the third amended habeas corpus petition. This count alleges that the increase in minimum time served before parole eligibility from 50 percent of one's sentence to 85 percent constitutes retroactively applied increased punishment.
The respondent's motion is based on two grounds. First, he argues that the failure to name the board of parole as a party is a jurisdictional defect since only that board can grant the relief sought.
The respondent further claims that the court lacks subject matter jurisdiction because the petition does not make out a valid ex post facto claim.
The respondent relies on the discretionary nature of parole in Connecticut in stating that the petitioner has not stated a claim for relief. The respondent asserts that in Connecticut, inmates do not have a right to, nor can they request, a parole hearing. See Vincenzo v. Warden, 26 Conn. App. 132, 141,599 A.2d 31 (1991).[1] The respondent argues that an ex post facto claim cannot be supported by a change in parole eligibility in Connecticut, where no prisoner has a right to parole.
 DISCUSSION I A. Federal precedent:
CT Page 722
The test for a violation of the ex post facto clause of the United States Constitution[2] does not require a protected liberty interest. See Weaver v. Graham, 450 U.S. 24, 29,101 S.Ct. 960, 67 L.Ed.2d 17 (1981) ("[A] law need not impair a `vested right' to violate the ex post facto prohibition."). Laws that violate the ex post facto clause include "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed," or a law "which makes more burdensome the punishment for a crime after its commission." (Emphasis in original; internal quotation marks omitted.) Collins v. Youngblood, 497 U.S. 37, 42,110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); see also California Department ofCorrections v. Morales, 514 U.S. 499, 504-05 115 S.Ct. 1597,131 L.Ed.2d 588 (1995).
Federal courts have struck down laws that retroactively increased either the minimum or maximum prison sentences attached to a crime as ex post facto increases in punishment. In Miller v.Florida, 482 U.S. 423, 432-33, 107 S.Ct. 2446, 96 L.Ed.2d 351
(1987), the United States Supreme Court confronted the issue of whether the retroactive increase in a mandatory minimum sentence, while the maximum remained the same, constituted a violation of the ex post facto clause. The Supreme Court found the retroactive removal of the chance of a lower sentence unconstitutional, even absent any evidence that the petitioner would have received something less than the maximum. Id. In Lindsey v. Washington,301 U.S. 397, 400, 57 S.Ct. 797, 81 L.Ed.2d 1182 (1937), the Supreme Court found that a retroactive change in the sentencing guidelines, making what had been the maximum sentence into the mandatory sentence, also violated the ex post facto clause.
In another case, the United States Supreme Court determined that the retroactive repeal of "all hope" of parole through a "no parole" provision raised an ex post facto clause question. SeeWarden v. Marrero, 417 U.S. 653, 662-63, 94 S.Ct. 2532,41 L.Ed.2d 383, reh'g denied, 419 U.S. 1014, 95 S.Ct. 234,42 L.Ed.2d 288 (1979). In Marrero the Supreme Court supported its ruling that the retroactive removal of parole was an ex post facto law with the following reasons: "First, only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole . . . For the confined prisoner, parole — even with its legal constraints — is a long step toward regaining lost freedom. An observation made in a somewhat different context is apt: `It may be "legislative grace" for Congress to provide for parole but when it expressly CT Page 723 removes all hope of parole upon conviction and sentence for certain offense, . . . this is in the nature of an additional penalty.' . . . Second, a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question of the Ex Post Facto Clause . . ." (Citations omitted.) Warden v. Marrero, supra, 417 U.S. 662-63, quoting Durant v. United States, 410 F.2d 689, 691 (5th Cir. 1969).
Recently, the Supreme Court further explained that the "retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the ex post facto clause because such credits are `one determinant of [a] petitioner's prison term . . .' [T]he removal of such provisions can constitute an increase in punishment, because a `prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed.'" Lynce v. Mathis,519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), quotingWeaving v. Graham, supra, 450 U.S. 32.
The cases where the Supreme Court has found a violation of the ex post facto clause have dealt with law that affected the length of imprisonment. See Miller v. Florida, supra,482 U.S. 432; Warden v. Marrero, supra, 417 U.S. 662-63; Lindsey v.Washington, supra, 301 U.S. 400. In instances where the Supreme Court found no violation, there was an insufficient effect on the length of the imprisonment. See California Department ofCorrections v. Morales, supra, 514 U.S. 505-07 (finding that reduction in frequency of parole hearings did not violate ex post facto clause when standards were used to insure that frequency of parole hearings were decreased only for those not likely to be paroled); Dobbert v. Florida, 432 U.S. 282, 301, 97 S.Ct. 2290,53 L.Ed.2d 344, reh'g denied, 434 U.S. 882, 98 S.Ct. 246,54 L.Ed.2d 166 (1977) (finding change in minimum time served before parole eligibility on a life sentence irrelevant to prisoner sentenced to death).
Based on these precedents, the petitioner has stated a claim that implicates the ex post facto clause. The law at the time the petitioner entered into the plea bargain allowed the board to consider parole for a prisoner convicted of the petitioner's crimes after he served 50 percent of his sentence. Under the law in place at the time he was sentenced, the petitioner must serve CT Page 724 85 percent of his sentence before he is eligible for parole. The allegations of the petition resemble the situation in Marrero
where the United States Supreme Court found that the increase in the length of time, to 100 percent of the sentence before a prisoner was eligible for parole, had ex post facto implications. See Warden v. Marrero, supra, 417 U.S. 663. Petitioner's claim goes to an increase in the "onerousness" of the penalty after the crime was completed. See Weaver v. Graham, supra, 450 U.S. 30-31 (stating that "an individual's right to less punishment" is not critical to ex post facto claims and that "even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense").
 B. Connecticut Precedent:
Decisions of the Connecticut Appellate Courts are not totally harmonious with those of the Federal Courts, particularly in treating with the subject of what constitutes a "liberty interest."
In Beasley v. Commissioner of Correction, 50 Conn. App. 421,432-33, ___ A.2d ___ (1998), the Appellate Court considered whether the denial of eligibility for good time credits for prisoners in administrative segregation violated the ex post facto prohibition. There were three decisive factors for the court. First, the removal of good time credits for prisoners so situated was not a punitive law. Id. Second, the prisoner was in segregation for events that occurred after the change in law, even though his crime was completed before the change.[3] Id., 432. Third, the effect of the loss of the good time credits on the prisoner's length of imprisonment was speculative because the granting and removal of the credits were discretionary. Id. The court recognizes that the Appellate Court could analogize the discretionary nature of the good time credits in Beasley to the discretionary nature of the granting of parole in this case in finding that the effect of the change in the minimum time served is too speculative for a violation of the ex post facto clause.
In fact the Connecticut courts have consistently taken a limited view of the ex post facto prohibition. For example, changes in standards of proof and burdens of proof for the release of one who successfully pleaded the insanity defense do not implicate the ex post facto clause because the commitment is CT Page 725 not punitive. See Payne v. Fairfield Hills Hospital,215 Conn. 675, 684, 578 A.2d 1025 (1990); Warren v. Commissioner of Health,43 Conn. App. 592, 598, 685 A.2d 332 (1996), cert. denied,240 Conn. 901, 688 A.2d 331 (1997). Other instances where no ex post facto violations were found include a change in the admissibility of evidence and the use of a probable cause hearing rather than an indictment. See State v. Almeda, 211 Conn. 441, 453,560 A.2d 389 (1989); State v. Rollinson, 203 Conn. 641, 646, 526 A.2d 1283
(1987).
In State v. Millhouse, 3 Conn. App. 497, 502, 490 A.2d 517
(1985), the Appellate Court found that the retroactive removal of a judge's discretion to impose less than the maximum sentence did violate the ex post facto clause. In its decision, the Appellate Court commented that "[r]eduction or elimination of the defendant's opportunity for obtaining parole has been held to violate the ex post facto clause." Id., citing Lindsey v.Washington, supra, 301 U.S. 97; Dufresne v. Baer, 744 F.2d 1543,1549 n. 18 (11th Cir. 1984); Rodriguez v. United States v. ParoleCommission, 594 F.2d 170 (7th Cir. 1979).
 C. Conclusion:
These Connecticut cases reflect a point of view that is more limited than that of the federal courts described above. Nevertheless in Abed v. Commissioner of Correction,43 Conn. App. 176, 179, 682 A.2d 558, cert. denied, 239 Conn. 937,684 A.2d 707 (1996), the court stated:
"Subject matter jurisdiction for adjudicating habeas petitions is conferred on the Superior Court by General Statutes § 52-466, which gives it the authority to hear those petitions that allege illegal confinement or deprivation of liberty."
The court went on to say that "the petitioner's (allegation) that the prospective denial of good time credits will result in his illegal confinement" was "sufficient to invoke the subject matter jurisdiction of the trial court."
In light of this case, federal precedent and construing the allegations of the complaint in their most favorable light;Savage v. Aronson, 214 Conn. 256, 264; (1990) the petitioner has alleged facts that support a claim that the 85 percent CT Page 726 requirement as applied to him violates the ex post facto clause, making an element of his confinement illegal. The petitioner has stated a cause of action that is properly before the court, therefore the motion to dismiss is denied. See Castagno v.Wholean, 239 Conn. 336, 338 n. 2. (1996).
 II.
The respondent also argues that the petition makes claims for relief from a nonparty to this action, the board, and these claims for relief should be dismissed. More specifically, the respondent claims that the petitioner's failure to notify the board or join it as a defendant denies jurisdiction to the court because this is a declaratory judgment situation. The respondent's argument fails for the following reasons.
The respondent is correct in stating that trial courts lack jurisdiction over declaratory judgment actions when an interested party has not been notified or joined. See Connecticut Ins.Guaranty Assn. v. Raymark Corp. , 215 Conn. 224, 229-30,575 A.2d 693 (1990). The petitioner is not, however, seeking a declaratory judgment. The petitioner's prayer for relief requests that the court vacate his conviction and sentence and that his parole eligibility be based on the law in effect on the date his crime was committed. See Petition, Prayer for Relief, ¶¶ 2, 3; see also State v. Phidd, 42 Conn. App. 17, 30, 681 A.2d 310, cert. denied, 238 Conn. 907 (1996), cert. denied, 117 S.Ct. 115,137 L.Ed.2d 315 (1997) (discussing scope of remedies available to habeas courts). In a declaratory judgment case "[t]he prayer for relief shall state with precision the declaratory judgment desired. . . ." Practice Book § 17-56(2), formerly Practice Book § 391. The court does not need to construe the action as seeking a declaratory judgment absent a specific request for declaratory relief. See Mannweiler v. LaFlamme, 232 Conn. 27, 34,653 A.2d 168 (1995). In fact, "[t]he judicial authority will not render declaratory judgments upon the complaint of any person . . . where the judicial authority shall be of the opinion that the parties should be left to seek redress by some other form of procedure. . . ." Practice Book § 17-55, formerly Practice Book § 390. The petition does not state a claim for a declaratory judgment. It appropriately states a habeas corpus claim for relief from allegedly illegal confinement.
Because the petitioner is not seeking a declaratory judgment, the petitioner's failure to join the board should be analyzed CT Page 727 under the concept of the nonjoinder of a necessary party. "A necessary party is one having an interest in the controversy, who ought to be made a party, so that the court may finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." Washington Trust Co. v. Smith,42 Conn. App. 330, 337-38, 680 A.2d 988 (1996), rev'd on other grounds, 241 Conn. 734, 699 A.2d 73 (1997). As the agency responsible for granting parole hearings, the board becomes a necessary party. If the court must fashion an order to grant the relief the petitioner seeks, it must be enforced against the board.
The sole named defendant in this action is the warden of the prison in which the petitioner is held. Under Connecticut law the person with "custody of the body" of the petitioner must be named in a habeas corpus action. See General Statutes § 52-466(c); see also Braden v. 30th Judicial Circuit Court of Kentucky,410 U.S. 484, 494-95, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1972) (explaining reasoning behind naming one with custody in habeas corpus). The respondent claims that the petition should be dismissed because of the petitioner's failure to name the board. "An action shall not be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in . . . as the court deems the interests of justice require." General Statutes § 52-108. Moreover, "a motion to dismiss is not the proper method to raise the issue of the nonjoinder of a party." Levinev. Police Commission, 28 Conn. App. 344, 351, 612 A.2d 787, cert. denied, 223 Conn. 923, 614 A.2d 823 (1992). "Ordinarily, an objection predicated on a claim of nonjoinder of a necessary or indispensable party does not go to the jurisdiction of the court."[4] Gaudio v. Gaudio, 23 Conn. App. 287, 305,580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990).
Because the petitioner is not seeking a declaratory judgment, the petitioner's failure to join the board as a defendant is not fatal to the court's jurisdiction and is not an appropriate ground for the motion to dismiss. If the petitioner is successful in his ex post facto claim, joining the board in the action will give the court the capacity to successfully fashion a remedy.
The petitioner has sufficiently alleged a violation of the ex post facto clause of the United States Constitution. For that reason the court has subject matter jurisdiction over the claim. The absence of the board from the action does not deny subject matter jurisdiction to the court and the motion to dismiss based CT Page 728 on this claim is also denied.
Anthony V. DeMayo Judge Trial Referee