GUERNSEY, J.
On May 2, 1997 the Plaintiff Larry Ager, proceeding pro se, appealed to the i Gaming Disputes Court from a “preliminary, procedural or intermediate action” of i the Office of the Director of Regulation, claiming that the same was “clearly erroneous in view of the reliable, probative and substantial evidence on the whole record”. The Plaintiff had been employed by the Mohegan Tribal Gaming Authority as a probationary employee pending his application for a non-gaming license, the denial which by the Director of Regulation resulted in termination of his employment. The Defendant has moved to dismiss on grounds that this action is an appeal from the denial of a non-gaming license, over which this court lacks subject matter jurisdiction. At the hearing on Defendant’s motion, the Plaintiff stipulated that his employment was terminated because of the denial of his application for a non-gaming license.
Although Defendant’s Memorandum of Law claimed that this court lacked subject matter jurisdiction because the license at issue was a non-gaming license and that the Gaming Disputes Court lacks jurisdiction over non-gaming matters, the amicus curiae Brief of the Mohegan Tribe dated October 14, 1997 asserts that this matter should be dismissed on grounds that there has been no waiver of sovereign immunity permitting the appeal of the denial or revocation of a non-gaming license. For the reasons set forth below, it is found that neither the Mohegan Tribe nor the Mohegan Tribal Gaming Authority has waived sovereign immunity with respect to the appeal of matters related to non-gaming licenses, and that Plaintiffs appeal must therefore be dismissed.
A. SUBJECT MATTER JURISDICTION OF THE GAMING DISPUTES COURT.
It is unquestioned that the Gaming Disputes Court is a court of limited jurisdiction, and that the court possesses only such jurisdiction as is set forth in Article XIII, Section 2 of the Constitution of The *382 Mohegan Tribe of Connecticut (hereafter the “Mohegan Constitution”) and M.T.O. 95-4, “An Ordinance Establishing the Gaming Disputes Court” (originally enacted as 95-7/20-1) or as may otherwise be provided by ordinance (see, e.g., M.T.O. 96-2 Sec. 3). Section 501 of M.T.O. 95-4 provides that this court shall have “exclusive original jurisdiction over all cases with respect to which the Tribe has conferred subject matter jurisdiction pursuant to Article XIII of the Mohegan Constitution.” Although counsel for the Defendant Office of the Director of Regulation has focused on the word “Gaming” in arguing that this court is without subject matter jurisdiction to entertain an appeal relating to the denial of a non-gaming license, this argument fails to consider the broad constitutional definition of “Gaming” contained in Article XIII:
... the development, construction, operation, promotion, financing, regulation, and licensing of gaming, and any associated hotel, associated resort or associated entertainment facilities, on tribal lands (collectively, “Gaming”).
Mohegan Constitution, Art. XIII, Sec. 1. Furthermore, the constitutional jurisdiction of this court is broadly defined in connection with the preceding definition of Gaming:
Exclusive jurisdiction for the Tribe over disputes arising out of or in connection with the Gaming, the actions of the Tribal Gaming Authority, or contracts entered into by The Mohegan Tribe or the Tribal Gaming Authority in connection with Gaming, including without limitation, disputes arising between any person or entity and the Tribal Gaming Authority, including customers, employees ... shall be vested in the Gaming Disputes Court.
Mohegan Constitution, Art. XIII, See.2.
It is certainly conceivable that the position of “pantry person” for which the Defendant had applied would fall within the foregoing boundaries, either in connection with the operation of an associated entertainment facility on tribal lands or the actions of the Tribal Gaming Authority. However, the disposition of Defendant’s Motion to Dismiss does not require the resolution of this issue in light of the conclusion that there has been no waiver of the sovereign immunity of the Mohegan Tribe or the Mohegan Tribal Gaming Authority that would permit an appeal from the denial or revocation of a non-gaming license.
B. SOVEREIGN IMMUNITY OF THE MOHEGAN TRIBE AND MOHEGAN TRIBAL GAMING AUTHORITY.
The Constitution of The Mohegan Tribe of Indians of Connecticut expressly provides that the powers of the Tribe shall include all the inherent sovereign rights and powers of an independent, indigenous sovereign nation. Mohegan Constitution, Art. II. It is well established that Indian tribes possess the “common-law immunity from suit traditionally enjoyed by sovereign powers”, Santa Clara, Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978), absent “a clear waiver [of immunity] by the tribe or congressional abrogation.” Oklahoma, Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). The issue of tribal sovereign immunity is jurisdictional in nature. McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989). At issue in this case is whether there has been an effective waiver of sovereign immunity so as to allow the appeal of a final decision by the Director of Regulation denying or revoking a non-gaming license.
*383 Section 502 of Article V of M.T.O. 95-4 specifies that nothing in the ordinance establishing the Gaming Disputes Court “shall be construed as a waiver of the sovereign immunity of the Tribe, the Authority or the Tribe’s other enterprises or political subdivisions, or its officers, agents, or employees, unless specifically denominated as such.” Therefore, for this action not to be barred by sovereign immunity there must be an effective waiver with respect to decisions regarding the issuance or revocation of non-gaming licenses. Any such waiver of the Tribe’s sovereign immunity “cannot be implied but must be unequivocally expressed.” Cherokee Nation of Oklahoma v. Babbitt, 117 F.3d 1489, 1498 (D.C.Cir.1997), citing San-ta Clara, Pueblo, 436 U.S. at 58, 98 S.Ct. 1670.
Mohegan Tribal Ordinance No. 95-6, establishing procedures for appeals to the Gaming Disputes Court, authorizes a person “who is aggrieved by a final decision” to appeal to the Gaming Disputes Court as provided in that ordinance. “Final decision” is defined as “a final decision of the Director of Regulation regarding ... the issuance or revocation of gaming licenses.” M.T.O. 95-6 Sec.1(b)(1). In order for an appeal to be taken from a “preliminary, procedural or intermediate agency action or ruling”, (the category selected by the pro se Plaintiff) it is required that the person “will otherwise qualify under this ordinance to appeal from the final agency action or ruling.” M.T.O. 95-6, Sec. 2(b)(1).
The Director of Regulation is charged with carrying out the Tribe’s regulatory duties “and shall have final authority over all license applications.” M.T.O. 95-2, Sec. 12(5). The limitation on the right of appeal to decisions involving gaming licenses is set forth not only in M.T.O. 95-6, but also in M.T.O. 95-2, which provides that “fflinal decisions of the Director of Regulation regarding the promulgation and enforcement of regulations and the issuance or revocation of gaming licenses shall be appealable to the Gaming Disputes Court ...” M.T.O. 95-2, Sec. 13. The distinction between the two types of licenses, gaming and non-gaming, is emphasized by the very specific definitions of “gaming license”, “gaming”, and “gaming operation” contained in Ordinance No. 94-1 (enacted as 94-7/28-2), “An Ordinance to Regulate and Provide for the Licensing of Class II and Class III Gaming on Tribal Lands of the Mohegan Tribe of Indians of Connecticut.” Unlike the broad definition of “Gaming” as used in Article XIII of the Mohegan Constitution with respect to the [Mohegan] Tribal Gaming Authority (and the Gaming Disputes Court), “gaming” in M.T.O. 94-1 is defined as “risking any money or other thing of value for gain, contingent, wholly or partially, upon lot, chance, the operation of Gaming apparatus, or the happening or outcome of an event over which the person taking the risk has no control.” A “Gaming License” means “the permit granted by the Tribe to an applicant for employment with a Gaming Operation”. “Gaming operation” in turn is defined as follows:
“Gaming Operation” means each economic entity that is licensed by the Tribe, operates the games, receives the revenues, issues the prizes, and pays the expenses. A gaming operation may be operated by the Tribe directly or by a Management Contractor.
M.T.O. 94-1, Sec. 4-l(m-p). It is clear that Plaintiff’s position in food service does not fall within the foregoing definition.
A review of applicable ordinances and constitutional provisions fails to reveal any express waiver of sovereign immunity with respect to the appeal of the denial or revocation of an non-gaming license, and *384 absent such a waiver, this action must be dismissed on grounds of sovereign immunity. In this case, however, the Director of Regulation by letter dated June 19, 1997 (one month after the filing of this appeal) informed the Plaintiff not only that his gaming license application was “not being forwarded to the State of Connecticut”, but also that the Plaintiff “may appeal this decision to the Mohegan Tribal Gaming Disputes Court, P.O. Box 549, Uncasville, CT 06382, telephone 848-6152.” Although not raised by the pro se Plaintiff, the issue thus presented is whether the same constituted a limited waiver of sovereign immunity as regards this action.
Article XIII of the Mohegan Constitution specifies that the Tribal Gaming Authority “shall have the power to grant a limited waiver of sovereign immunity as to Gaming matters”, with “Gaming” being given the broad constitutional definition described above. Mohegan Constitution, Art. XIII, Sec. 1. Ordinance No. 95-2 of the Mohegan Tribe of Indians of Connecticut (enacted as 95-7/15-1), establishes the Mohegan Tribal Gaming Authority pursuant to and consistent with Article XIII of the Mohegan Constitution. M.T.O. 95-2, Sec.l. This ordinance further establishes a Management Board for the purpose of carrying out specified powers and duties, including implementing:
... the policies and purposes set forth in Article XIII of the Mohegan Constitution, the Tribal Gaming Ordinance, Mohegan Ord. 94-1, and Resolution No. 94-7/282 [No. 94-7/28-2] and this Ordinance, and to exercise the powers set forth in subsection (e) below without any further authorization or subsequent approval by the Tribal Council or the Tribe.
M.T.O. 95-2, Sec. 5(b)(2). The Management Board is specifically given the power “to grant limited waivers of sovereign immunity, to the extent permitted by Article XIII of the Mohegan Constitution ...” M.T.O. 95-2, Sec. 5(c)(10). The Management Board is charged with the appointing of a Director of Regulation to perform the gaming regulatory functions of the Tribal Government. M.T.O. 95-2, Sec. 5(b)(10). While the Management Board of the Mohegan Tribal Gaming Authority may well have the authority to grant a limited waiver of sovereign immunity for appeals dealing with non-gaming licenses, the issue presented in this case is whether the Director of Regulation has the authority to do so.
The Director of Regulation, appointed by the Management Board, is a “principal officer” of the Mohegan Tribal Gaming Authority. M.T.O. 95-2, Sec. 11(4). It is specifically provided that the Director of Regulation “shall not be a member of the Management Board, nor a member of the Tribal Council”, M.T.O. 95-2, Sec. 11(4). The authority of the Director of Regulation is set forth in M.T.O. 95-2, Sec. 12(5), specifically: carrying out “the Tribe’s regulatory duties as described in the Gaming Ordinance, Ordinance No. 94-1, as may be amended from time to time.” M.T.O. 95-2, Sec. 12(5). Nowhere in this Ordinance, or M.T.O. 94-1 is there any suggestion that the Director of Regulation, in his regulatory duties, has the authority to grant a limited waiver of sovereign immunity. The exclusion of the Director of Regulation from membership in the Management Board of the Mohegan Tribal Gaming Authority and the Tribal Council, who have the authority to grant waivers of sovereign immunity, is consistent with the intention not to vest in the Office of the Director of Regulation this power.
However unfair it may appear to the Plaintiff to be told by the Director of Regulation that he has the right to appeal to this court, and then to face a motion to *385 dismiss his appeal filed by the same Director of Regulation on grounds that he has no such right of appeal, for the reasons set forth above it is clear that there is no right of appeal from the denial of a non-gaming license, and the Director of Regulation has no authority to waive the sovereign immunity of the Mohegan Tribal Gaming Authority in order to permit such an appeal. No claim has been raised by the Plaintiff under TGA 97-5, the Discriminatory Employment Practices Claims and Appeals Ordinance, or M.T.O. 96-2, An Ordinance Establishing the Mohegan Torts Code, and thus the Plaintiff cannot avail himself of the limited waivers of sovereign immunity contained therein.
The court is aware that this decision will result in denying to the Plaintiff a right to have his case heard and decided on its merits. The Mohegan Tribal Gaming Authority has enacted no counterpart to the Employment Appeal Ordinance, M.P.T.O. 061694-03, adopted by the Mashantucket Pequot Gaming Enterprise, which waives the sovereign immunity of the Mashan-tucket Pequot Tribe for suits against the Gaming Enterprise by employees who were wrongfully discharged. M.P.T.O. 061694-03 Sec.2(a).
 “The issue of tribal sovereign immunity is jurisdictional in nature.” McClendon v. United States, 885 F.2d at 629. “[Ojnce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented ... and the court must fully resolve it before proceeding further with the case.... ” Community Collaborative of Bridgeport v. Ganim, 241 Conn. 546, 552, 698 A.2d 245 (1997), quoting Castro v. Viera, 207 Conn. 420, 429-30, 541 A.2d 1216 (1988). A motion to dismiss is the proper manner of asserting lack of subject matter jurisdiction. Conn. Prac. Bk. Sec. 143(1); M.T.O. 95-4 Article VIII, See. 800. As set forth above, there has been no waiver of sovereign immunity with respect to the appeal of the decisions of the Director of Regulation concerning non-gaming licenses, and therefore this court is without subject matter jurisdiction.
Accordingly, Defendant’s Motion to Dismiss is hereby granted.