GUERNSEY, Chief Judge.
This is an action brought against the Mohegan Tribal Gaming Authority and Michael Stewart, individually, in three counts, in which the Plaintiff seeks monetary damages and other relief. The Plaintiff has alleged that as an employee of the Mohegan Tribal Gaming Authority, she was “promoted” to Shuttle Manager and then to Fleet Maintenance Manager, and that while acting as Fleet Maintenance Manager her direct supervisor was the Defendant Michael Stewart. Plaintiffs general allegations against Michael Stewart include his allegedly placing her in jeopardy of being charged with misappropriation of funds, refusal to meet with the Plaintiff, outrageous conduct beyond the scope of his job description and the MTGA policy and procedures, engaging in a conspiracy to terminate the Plaintiff, undertaking a course of conduct comprised of yelling, vulgar language, mood swings and accusations, changing employee reviews generated by the Plaintiff in front of the employee being reviewed, and other conduct apparently leading to questioning of the Plaintiff for the alleged making of a tape recording and her dismissal by the General Manager for failure to answer questions. Plaintiff thereupon allegedly declined an offer of three months of severance pay and timely filed a request for Board of Review hearing at which she was denied representation by an attorney under of Board of Review policy, denied the right to call witness on her behalf and denied the right to cross examine witnesses called against her. Subsequent to the upholding of her termination by the Board of Review, Plaintiff alleges that, through counsel, she requested that the Board of Review decision be forwarded to the General Manager' for' review.
Plaintiffs Count One alleges that the conduct of the Defendant Michael Stewart was outrageous and outside the scope of authority or exceeded the scope of his employment and seeks damages for negligent infliction of emotional distress pursuant to M.T.O. 98-1 Section 6. Her Count Two alleges that she was denied an appeal to the General Manager and that the *414 Board of Review policies violated her minimum due process rights in violation of 25 U.S.C. Section 1302 et. seq. Her Count Three alleges that the actions of the Defendants against the Plaintiff, a single white female, were discriminatory in violation of the Discriminatory Employment Practices Ordinance, M.T.O. 98-2, as well as 25 U.S.C. Section 1302 et. seq.
The Defendants Mohegan Tribal Gaming Authority and Michael Stewart moved to dismiss the complaint in its entirety on grounds that the court lacked jurisdiction over the claims asserted therein or, in the alternative, moved the court to strike any claims over which the court determined it had jurisdiction for failure to state a claim upon which relief may be granted. In general, the Defendants claim that, since the Plaintiff was an employee of the MTGA, her sole remedy arising from an employment relationship was to be found under M.T.O. 98-2, the Discriminatory Employment Practices Ordinance, and that she could not bring a claim under the Mohegan Torts Ordinance, M.T.O. 98-1. The Defendants further contend that Plaintiff had no property interest in continued employment, and therefore cannot assert a claim for denial of due process under 25 U.S.C. Section 1302, that any claims against Michael Stewart can be asserted only against the MTGA pursuant to the provisions of M.T.O. 98-2, and that in any event Plaintiff failed to file a timely appeal to the General Manager from the decision of the Board of Review, thus failing to exhaust administrative remedies and depriving this court of jurisdiction over her complaint.
The decision on Defendant’s Motion to Dismiss and/or Strike was deferred pending the Mohegan Gaming Disputes Court of Appeal’s ruling in the matter of Darius Bethel v. Mohegan Tribal Gaming Authority, Et Al. GDCA-T-98-500, which presented many of the same issues. At a hearing subsequent to the rendering of a decision in Bethel by the Court of Appeals, it became clear that the issue of Plaintiffs exhaustion of administrative remedies could not be decided without an evidentia-ry hearing, and Plaintiff renewed an earlier motion therefor. This was granted and an evidentiary hearing was conducted.
A. FINDINGS OF FACT.
In January, 1999 Donna Worthen was terminated from the Transportation Department for difficulties in managing, and the taping of conversations.
On January 7, 1999 she requested a Board of Review Hearing.
On Tuesday, January 12, 1999 the Board of Review Hearing took place, and her termination was upheld.
On Wednesday, January 13, 1999 the decision of the Board of Review was communicated by telephone to Ms. Worthen by Kevin Bogle, Vice-President for Human Resources. At that time she did not request a Step 5 review. A severance package was offered to Ms. Worthen by Kevin Bogle, but Ms. Worthen wished to think about it before deciding.
5. On Friday, January 15, 1999, Kevin Bogle spoke to Ms. Worthen about the severance package, wishing to know if it was accepted.
6. The General Manager’s Office was open on January 18, 1999, the State observance of Martin Luther King Jr.’s Birthday. On that day, Kevin Bogle was also in his office and left a telephone message for Ms. Worthen. There was no request for a Step 5 review made by Ms. Worthen by midnight, January 18, 1999.
7. Kevin Bogle, Vice-President for Human Resources, works Monday through Friday, 9:00 a.m. to 6:00 p.m. and Saturday *415 9:00 a.m. to 1:00 p.m. He was not in his office on Sunday, January 17, 1999.
8. On January 20, 1999 Edward T. Scallon, attorney for Ms. Worthen, called Kevin Bogle requesting an appeal to the General Manager, also known as a Step 5 review. A letter1 from Attorney Scallon requesting this was received by fax on January 21, 1999.
9. It is the policy of the Department of Human Resources that any form of communication requesting a Step 5 review is acceptable if received within the five day period. Voice mail and e-mail communication are available seven days a week, 24 hours per day.
10. It is the policy of the Department of Human Resources that such a request cannot be made by an attorney for the employee.
11. There is nothing in the Employee Handbook that gives any indication as to the manner in which an appeal to the General Manager must be made.
B. DISCUSSION
1. STANDARD OF REVIEW.
A Motion to Dismiss is the proper1 vehicle for raising lack of subject matter1 jurisdiction. G.D.R. Section 20(a)(1); Bethel v. Mohegan Tribal Gaming Authority, 1 G.D.R. 32, 1 Am. Tribal Law 420, 1998 WL 35281214 (1998). The Defendants Mohegan Tribal Gaming Authority (MTGA) and Michael Stewart have moved to dismiss Plaintiffs complaint in its entirety or, in the alternative, to strike any claims over which the court finds it may assert jurisdiction. In deciding jurisdictional issues raised by a Motion to Dismiss, the court must consider “the allegations of the complaint in their most favorable light.” Lemoine v. McCann, 40 Conn.App. 460, 464, 673 A.2d 115 (1996) cert. den. 237 Conn. 904, 674 A 2d. 1330 (1996) quoting Reynolds v. Soffer, 183 Conn. 67, 68, 438 A.2d 1163 (1981). “A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts.” Cart J. Herzog Foundation, Inc. v. University of Bridgeport, 41 Conn.App. 790, 793, 677 A.2d 1378 (1996). “When issues of fact are necessary to the determination of a court’s jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. The trial court erred in not holding such a hearing.” Unisys Corp. v. Department of Labor, 220 Conn. 689, 695-96, 600 A.2d 1019 (1991) quoting Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 56, 459 A.2d 503 (1983).
2. PLAINTIFF’S CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT ONE).
It is dearly established that the Gaming Disputes Court is a court of limited jurisdiction, and that this court possess only such jurisdiction as is set forth in Article XIII Section 2 of the Constitution of the Mohegan Tribe of Connecticut and MTO 95—4 “An Ordinance Establishing The Gaming Disputes Court (originally enacted as 95-7/20-1) or as may be otherwise be provided by ordinance ...” Ager v. Office of the Director of Regulation, 1 G.D.R. 1, 1 Am. Tribal Law 380, 1997 WL 34678574 (Mohegan Gaming Trial Ct.1997) . Furthermore, even if this court has jurisdiction, the Mohegan Tribe has all the “inherent sovereign rights and powers of an independent, indigenous sovereign nation.” Mohegan Constitution, Article II. This includes the common law immunity from suit traditionally enjoyed by sovereign powers. Santa Clara Pueblo v. Mar *416 tinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The Tribe is subject to suit only where Congress has authorized suit or the Tribe has waived its immunity. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc. 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981(1998). This sovereign immunity may be waived by the Tribal Council. Mohegan Constitution Article IX, Sec. 2(t).
The Mohegan Tribe has granted a limited waiver of sovereign immunity for certain specific types of claims in the Mohegan Torts Code, M.T.O. 98-1:
SECTION 3.
(c) The sovereign immunity of The Mohegan Tribal Gaming Authority is waived in the following instances:
(1) Injuries proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority ...
Injuries to which this limited waiver sovereign immunity apply are defined as follows:
SECTION 2.
(i) “Injury means death, harm to a person, or damage or loss of property which, if inflicted by a person under Connecticut state law or tribal law, would constitute a tort and which in expressly covered by the liability insurance of the Gaming Enterprise Site without regard to any deductible amount contained in the insurance policy”
Although the caption of Plaintiffs First Count indicates that her claim is grounded in negligent infliction of emotional distress, various intentional acts on the part of the Defendant Michael Stewart are alleged. Nevertheless, a cause of action for unintentional infliction of emotional distress is well recognized as a tort in the State of Connecticut. Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978). This tort does not “depend on proof of either an ensuing physical injury or a risk of harm from physical impact”, but the Plaintiff bears the burden of pleading and establishing that “the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.” Morris v. Hartford, Courant Co., 200 Conn. 676, 683, 513 A.2d 66 (1986), quoting Montinieri v. Southern New England Telephone Co., op. cit. Although M.T.O. 98-1 Section 2(i), in defining “injury” uses but does not define the term “harm”, this term has previously been defined as “the existence of loss or detriment in fact of any kind to a person or resulting from any cause.” BLACKS LAW DICTIONARY. Fifth Edition, 1979. Therefore, the intentional or negligent infliction of emotional distress constitutes a tort within the meaning of “injury” as defined in M.T.O. 98-1.
Prior to the decision of the Mohegan Gaming Disputes Court of Appeals in Bethel v. Mohegan Tribal Gaming Authority, Et Al., there existed a substantial question as to whether, and under what circumstances, an individual employee of the “Gaming Enterprise” (actually, the Mohegan Tribal Gaming Authority or MTGA) might be held individually liable for commission of a tort. Trial Court opinions in the Gaming Disputes Court have indicated that M.T.O. 98-2, the Discriminatory Employment Practices Claims and Appeals Ordinance, provided the sole remedy for negligent tort claims arising out of the Plaintiffs employment relationship with the MTGA. See Pirolli v. Mohegan Tribal, Gaming Authority, 1 G.D.R. 25, 1 Am. Tribal Law 411, 1998 WL 35281216 (Mohegan Gaming Trial Ct.1998) (Wilson, J.). In the instant case, a different situation is presented: whether sovereign immunity prevents an action against an employee at *417 the Mohegan Tribal Gaming Authority alleged to be outside the scope of his employment.
Section 6 of M.T.O. 98-1 provides as follows:
This ordinance does not immunize employees of the Mohegan Tribal Gaming Authority from individual liability for the full measure of the recovery applicable to a claimant if it is established that their conduct exceeded the scope of their employment or authority. Claims for individual liability arising out of conduct which is found to exceed the scope of employment and which arise on the Gaming Enterprise Site shall be heard only in the Gaming Disputes Court.
M.T.O. 98-1 Sec. 6
Any doubt on this issue has been resolved by the Mohegan Gaming Disputes Court of Appeals decision in Bethel v. Mohegan Tribal Gaming Authority, Et Al.:
It is clear from this ordinance [M.T.O. 98-1 Sec. 6] that in a properly plead case where an employee’s conduct exceeded the scope of his or her employment, and which arises on the gaming site, the action could, and indeed, must be brought in the Gaming Disputes Court against the individual employee.
Bethel v. Mohegan Tribal Gaming Authority, 1 G.D.R. 32, 1 Am. Tribal Law 420, 1998 WL 35281214 (Mohegan Gaming Trial Ct.2000).
In Bethel, the allegations against the individual Defendants claimed conduct within the scope of their employment, and therefore were dismissed against the individual Defendants due to lack of waiver of sovereign immunity. In the instant case, however, the specific allegation against the individual Michael Stewart is that his conduct was “outrageous and outside the scope of authority or exceeded the scope of his employment.” Although the location of such conduct is not specifically alleged, it is clearly alleged to have taken place within the Plaintiffs employment relationship, and therefore on the “Gaming Enterprise Site.”
Based on the foregoing, it is held that the Gaming Disputes Court has jurisdiction to entertain a suit against an individual Defendant employee of the Mohegan Tribal Gaming Authority for conduct that exceeded the scope of his employment or authority and arose on the Gaming Enterprise site. The Defendants’ Motion to Dismiss and/or Strike is denied as to Plaintiffs Count One.
3. PLAINTIFF’S CLAIMS OF VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS . RIGHTS (COUNT TWO).
Count Two of Plaintiffs Complaint contains two distinct allegations regarding the Board of Review: first, that the Board of Review policy and Board of Review hearing violated Plaintiffs minimum due process rights and as such violated 25 U.S.C. Section 1302 et. seq., and second, that the Defendant MTGA’s denial of an appeal to the General Manager (the “Step 5 review”) was a violation of the Board of Review policy. The Defendants moved to dismiss on grounds that Plaintiff has no property interest in continued employment and therefore cannot assert a claim for denial of due process under 25 U.S.C. Section 1302, and that in any event Plaintiff failed to file a timely appeal to the General Manager from the decision of the Board of Review, thus failing to exhaust administrative remedies and depriving this court of jurisdiction over her complaint. While the court notes that it would have been preferable to separate these two claims into separate counts, given that the allegations involve important issues of sovereign immunity each issue will be ad *418 dressed separately. As the doctrine requiring exhaustion of administrative remedies implicates subject matter jurisdiction, Payne v. Fairfield Hills Hospital, 215 Conn. 675, 680, 578 A.2d 1025 (1990), it will be first addressed.
The doctrine of exhaustion of administrative remedies prevents a party with a right of appeal from the decision of an administrative agency from bringing “an independent action to test the very issues that the statutory appeal was designed to test.” Payne v. Fairfield Hills Hospital, Id. As the Connecticut Supreme Court has noted:
The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency’s findings and conclusions. Connecticut, Life & Health Ins. Guaranty Assn. v. Jackson, [173 Conn. 352, 358-59, 377 A.2d 1099 (1977)]. The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency ... in advance of possible judicial review.
Mendillo v. Board of Education of Town of East Haddam, 246 Conn. 456, 466-67, 717 A.2d 1177 (1998).
Nevertheless, this doctrine has been subjected to various exceptions, (sometimes “grudgingly,” Mendillo, 246 Conn. at 467, 717 A.2d 1177), one of which exists when “the administrative remedy would be useless.” Johnson v. Statewide Grievance Committee, 248 Conn. 87, 104, 726 A.2d 1154 (1999). “An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief.” Mendillo v. Board, of Education of Town of East Haddani, 246 Conn, at 467, 717 A.2d 1177, quoting Cannata, v. Dept. of Environmental Protection, 215 Conn. 616, 628, 577 A.2d 1017 (1990). In Mendillo, the Connecticut Supreme Court held “this exception applies to the facts of the present case because the issues in controversy between the plaintiff and defendants are not the issues contemplated by [the termination hearing].” Mendillo, 246 Conn. at 467, 717 A.2d 1177.
In similar circumstances, the Mashan-tucket Pequot Com! of Appeals has held that the doctrine of exhaustion of administrative remedies, an important element in the system of remedies available to employees at the Gaming Enterprise, recognized the exception that the doctrine does not apply where the challenge is to the constitutionality of a regulation under which an agency operates. Healy v. Mashantucket Pequot Gaming Enterprise, 1 MPR 50, 2 Mash.App. 13 (1998) (Healy I), affirmed, 2 Mash.App. 28, 1 MPR 63 (1999).
As regards Plaintiffs claim that the denial of her appeal to the General Manager violated Board of Review policy, this clearly falls within the doctrine requiring exhaustion of administrative remedies:
“It is not the plaintiffs preference for a particular remedy that determines whether the remedy ... is adequate ... and an administrative remedy, in order to be ‘adequate,’ need not comport with the plaintiffs opinion of what a perfect remedy would be ... [citations omitted] .. . ‘(an administrative remedy is adequate when it could provide the plaintiff with the relief that it seeks and provide a mechanism for judicial review)’ ”.
Johnson v. Statewide Grievance Committee, 248 Conn. 87 at 104, 726 A.2d 1154. In this case, what the Plaintiff sought, an appeal to the General Manager, is precisely what the administrative remedy would provide.
*419 Based on the testimony and evidence submitted, the Plaintiff failed to exhaust her administrative remedies by failing to appeal to the General Manager from the adverse decision of the Board of Review (a so-called “Step 5 review”). The testimony established that the adverse decision of the Board of Review hearing was communicated to the Plaintiff on January 13, 1999. It is the Defendants’ position that the last day for filing such an appeal would have been anytime on January 18, 1999. The testimony also established that on January 20, 1999 Edward T. Scallon, attorney for the Plaintiff, called the Vice-President of Human Resources, Kevin Bo-gle, and requested a Step 5 review (an earlier' affidavit from Mr. Bogle gave January 21, 1999 as the date for this request). A letter requesting the review was received by fax on January 21, 1999. The Plaintiff has argued that the intervening Saturday and Sunday should not be counted, nor should Monday, January 18, 1999, the State observance of Martin Luther King, Jr.’s Birthday.
The Employee Handbook gives no direction as to how to count the five day period in which review by the General Manager may be requested. Viewed alternatively, the Employee Handbook does not suggest a method for excluding any particular day from such computation, unlike the Discriminatory Employment Practices Claims and Appeals Ordinance, M.T.O. 98-2, which specifically excludes Saturdays, Sundays, and holidays observed by the Gaming Disputes Court in computing time periods of seven days or less. M.T.O. 98-2 Section 1(h). It is the position of the Defendants that since Mohegan Sun is open seven days a week, 24 hour's a day, and the General Manager and Vice-President of Human Resources have e-mail and voice mail to receive such messages at any time, there should be no exclusion for Saturdays, Sundays and holidays.
Although the court is not persuaded by Defendants’ argument that an attorney for an employee may not make an effective request for a Step 5 review, the same is not dispositive of this case. No compelling authority has been cited for1 the proposition that, under the unique operating circumstances of Mohegan Sun, there should be the exclusion of any particular day. Accordingly, it is held that a request for review must be filed within five days from the delivery of notice of the decision of the Board of Review to the employee. Adopting the procedure outlined in Section 7-17 of the Connecticut Rules of Practice, it is held that if the last day for the requesting of such a review occurs on a day when neither the General Manager nor the Vice-President for Human Resources or their e-mail or voicemail may be reached, then the last day for such request shall be the next day upon which this may be done. The evidence clearly showed that not only was the Vice-President for Human Resources was available on Monday, January 18, 1999, but also that his email and voicemail were also available on that day. Therefore, Plaintiff’s claims regarding the denial of her appeal to the General Manager are dismissed.
A different situation, however, is presented by the challenge under the Indian Civil Rights Act (ICRA) to the Board of Review Policy and the allegations of denial of basic due process rights thereunder. It is apparent to the court that such a challenge “simply is not the kind to dispute” that the hearing before the Board of Review or an appeal to the General Manager is designed to resolve. Mendillo v. Board of Education of the Town of East Haddam, 246 Conn. at 467, 717 A.2d 1177. “Although the mere allegation of a constitutional violation will not necessarily excuse the plaintiffs failure to exhaust avail *420 able administrative remedies,” Payne v. Fairfield Hills Hospital, 215 Conn. at 680, 578 A.2d 1025, a collateral constitutional challenge has been permitted even in the absence of a direct appeal. Id.; See also, Healy v. Mashantucket Pequot Gaming Enterprise, 1 M.P.R. 50, 2 Mash.App. 13 (1998) (Healy I), affirmed, 2 Mash.App. 28, 1 MPR 63 (1999). This challenge presents one similar in theory to that presented in Payne v. Fairfield Hills Hospital, where Plaintiff challenged the jurisdiction of the psychiatric security review board without exhausting administrative remedies. In that case, the Supreme Court held:
The [psychiatric security review board’s] expertise in niaking factual determinations regarding the mental condition of acquittees is therefore of no use in evaluating the plaintiffs legal claim. In view of the substantial constitutional question raised by this claim, the trial court properly concluded that it possessed jurisdiction to entertain such a challenge without first requiring the plaintiff to pursue an administrative remedy.
Payne v. Fairfield Hills Hospital, 215 Conn. at 681, 578 A.2d 1025. The Plaintiffs failure to exhaust her administrative remedies is therefore not a bar to challenge under 25 U.S.C. Section 1302 et. seq.
The Mohegan Gaming Disputes Court of Appeals has applied the due process clause of the Indian Civil Rights Act and the Employee Handbook to the extent of requiring a hearing by a Board of Review panel, Bethel v. Mohegan Tribal Gaming Authority, Et Al., 1 G.D.R. 32, 1 Am. Tribal Law 420, 1998 WL 35281214 (Mohegan Gaming Trial Ct.2000), but in that case stopped short of deciding whether the Plaintiff had a property interest in continued employment. “ICRA’s due process guarantees are only applicable to plaintiffs employment, however, if plaintiff has a property right in continued employment.” Bethel v. Mohegan Tribal Gaming Authority, 1 G.D.R. 32, 38, 1 Am. Tribal Law 420, 431, 1998 WL 35281214 (1998), citing Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
The court notes that the issue of whether an employee of Mohegan Sun has a property interest in continued employment has yet to be ruled upon by the Mohegan Gaming Disputes Court of Appeals, and that the trial court decisions are not consistent on this point (see e.g., Bethel v. Mohegan Tribal Gaming Authority, Et Al., 1 G.D.R. 32 (December 14, 1998)) (Freeman, C.J.); Pineiro v. Office of Director of Regulations, 2 Am. Tribal Law 386, 1999 WL 34976688 (Mohegan Gaming Trial Ct.1999) (Eagan, J). “Property interests are more than abstract needs, desires oi' unilateral expectations of benefits or privileges.” Packer v. Board, of Education of Town of Thomaston, 246 Conn. 89, 103, 717 A.2d 117 (1998). As the Connecticut Supreme Court has repeatedly stated:
To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement ...
Packer v. Board of Education of Town of Thomaston, 246 Conn, at 103-104, 717 A.2d 117. “A person has a legitimate claim of entitlement to a benefit . .. ‘if there are rules or mutually explicit understandings that support a claim of entitlement to the benefit’.” Packer v. Board of Education of Town of Thomaston, Id., quoting Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
As recognized by the Mohegan Gaming Disputes Court of Appeals, the *421 Plaintiffs right to a hearing before the Board of Review, if timely requested, is mandatory:
Step 4: In the case of a disciplinary final written notice or termination where the eligible employee remains unsatisfied following notification and explanation by Employee Relations, the employee shall have the right to have the disciplinary final written notice or termination considered by a Board of Review Panel; provided he/she makes a request to Employee Relation within forty-eight (48) hours of receiving notification and explanation.
Following the decision of the Board of Review, either party may appeal to the General Manager or in his absence, to the Vice-President of Human Resources, whose decision is final. Mohegan Sun Employee Handbook at 15; Bethel v. Mohegan Tribal Gaming Authority, Et AL., 1 G.D.R. 32, 1 Am. Tribal Law 420, 1998 WL 35281214 (Mohegan Gaming Trial Ct.2000).
In the Mohegan Gaming Disputes Trial Court, Chief Judge Freeman has analyzed this issue of property interest in employment and found that the lack of protections such as those contained in the Temporary Emergency Appeal Ordinance No. 061694-03 (June 16, 1994), adopted by the Mashantucket Tribal Council, prevent the finding of a property right in continued employment under the laws of the Mohegan Tribe. Bethel v. Mohegan Tribal Gaming Authority, Et AL., 1 G.D.R. 32, 40 (1998). In Pineiro v. Office of the Director of Regulations, however, Judge Eagan, albeit dealing with an appeal from the action of the Director of Regulation revoking a dealer license, found a valid property interest in continued employment and adopted the due process balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Pineiro v. Office of Director of Regulations, 2 Am. Tribal Law 386, 1999 WL 34976688 (1999).
While the Mohegan Sun Employee Handbook makes clear that employment is terminable at will and that the Five Step Employee Relations/Board of Review process does not affect the at will employment relationship, this process is established “to ensure that [Mohegan Sun] employees receive fair and equitable treatment.” To establish a property interest in employment “there must exist ‘rules [or mutually explicit] understandings that . . . support [her] claims of entitlement ... ’ ” Bartlett v. Krause, 209 Conn. 352, 366, 551 A.2d 710 (1988), quoting Perry v. Sindermann, 408 U.S. at 601, 92 S.Ct. at 2699. In Pirolii v. Mohegan Tribal Gaming Authority, Judge Wilson rejected similar defense contentions in a motion to dismiss that the Plaintiff had no protected property interest in continued employment on grounds that “the plaintiff can commence and prosecute an action in this court ‘to vindicate rights created by the ICRA’ ”, (although the court allowed that such a perceived shortcoming may be potential grounds for a motion to strike, an issue never reached due to the Plaintiffs failure to exhaust administrative remedies). Pirolli v. Mohegan Tribal Gaming Authority, 1 G.D.R. 25, 30 (1998).
In the present case the court finds it most appropriate to follow the reasoning of Judge Eagan in Pineiro v. Office of the Director of Regulations. The Mohegan Sun procedures dealing with Employee Relations, the Board of Review, and the appeal to the General Manager, if timely invoked, are mandatory, and available to all eligible part time and full time employees who have completed their 90 day development period. Further, a close reading of Johnson v. Mashantucket Pequot Gaming Enterprise reveals that, in the *422 opinion of the Mashantucket Pequot Court of Appeals, the Temporary Emergency Appeal Ordinance (for which there is no counterpart in Mohegan Tribal Law) served to augment, not establish, the “right to a protected status in employment” that already existed by virtue of the Disciplinary Policy and the Board of Review procedure. Johnson v. Mashantucket Pequot Gaming Enterprise, 1 Mash.App. 21, 1 MPR 15, 18 (1996). This latter policy, involving peer and management representative review, with review of the decision by the President/CEO of the Gaming Enterprise, is similar to the Mohegan Sun procedure involving Employee Relations, a peer/management Board of Review, and an appeal to the General Manager.
In light of the mandatory nature of the Employee Relations/Board of Review procedures, the right to which may be enforced under ICRA, (Bethel v. Mohegan Tribal Gaming Authority, 1 G.D.R. 32, 1 Am. Tribal Law 420, 1998 WL 35281214 (2000)), it is held that there exist “rules [or mutually explicit] understandings”, sufficiently supportive of Plaintiffs claims to a protected interest in employment.
Defendant’s Motion to Dismiss is therefore denied as to that portion of Count Two asserting a claim under ICRA.
4. PLAINTIFF’S CLAIMS OF DISCRIMINATORY EMPLOYMENT PRACTICE.
Count Three of Plaintiffs Complaint alleges that certain actions by the Defendant Michael Stewart constituted discriminatory acts “in violation of the ordinances of the Mohegan Tribal Gaming Authority”, and therefore constitute a discriminatory employment practice in violation of M.T.O. 98-2 as well as the Indian Civil Rights Act, 25 USC Section 1302. Addressing first the discriminatory employment practices claim, it is clear that, in a proper case, the Mohegan Tribal Gaming Authority has granted a limited waiver of sovereign immunity as set forth in M.T.O. 98-2:
The Mohegan Tribal Gaming Authority hereby grants a limited waiver of its sovereign immunity for the sole purpose of enabling an applicant for employment with the Gaming Enterprise or an employee or former employee of the Gaming Enterprise, who believes that he or she is or has been the object of a Discriminatory Employment Practice by the Gaming Enterprise, as defined in Section I, Part (i) of this ordinance, to file and process a Claim or an Appeal in the Gaming Disputes Court in accordance with and subject to the specific provisions expressed in this ordinance.
M.T.O. 98-2, Section 11(a). The ordinance makes clear that there is no waiver of sovereign immunity contained therein on any theory of liability for damages for breach of contract, quasi contract, tortuous conduct or otherwise arising out of application for or termination of employment, and that the named Defendant must be the Mohegan Tribal Gaming Authority, and no other person or entity. Although Plaintiff’s Complaint is not specific on this issue, Count Three is interpreted by the court as applying solely to the Mohegan Tribal Gaming Authority.
From the allegations of Plaintiffs Complaint, it is clear that the Plaintiff is a non-probationary employee with access to the Board of Review, and therefore does not have standing to file a claim pursuant to the Discriminatory Employment Practices Ordinance. M.T.O. 98-2, Section 111(a)(1). Plaintiffs sole claim under this ordinance would be an appeal from a “final decision” of the General Manager. M.T.O. 98-2, Section 111(a)(2). In this respect, *423 the doctrine of exhaustion of administrative remedies clearly applies:
No Appeal will lie from a Final Decision unless the Appellant has exhausted all applicable administrative remedies, including, but not limited to, the grievance and Board of Review process as set forth in the Gaming Enterprise Employment Policies.
M.T.O. 98-2, Section 111(a)(2). As previously set forth, Plaintiff failed to exhaust her administrative remedies by failing to make a timely request for a Step 5 review.
Absent “a clear waiver [of immunity] by the tribe or congressional abrogation”, Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), it is clear that Indian Tribes possess the “common law immunity from suit traditionally enjoyed by sovereign powers.” Long v. Mohegan Tribal Gaming Authority, 1 G.D.R. 5, 9, 1 Am. Tribal Law 385, 394, 1997 WL 34678573 (1997), quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). “While Indian Tribes can waive their sovereign immunity, such waiver may not be implied, but must be expressed unequivocally.” McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989). The limited waiver of sovereign immunity contained in M.T.O. 98-2 is dependent upon the exhaustion of administrative remedies. By failing to exhaust her administrative remedies, the Plaintiff is therefore barred by the express terms of M.T.O. 98-2 from filing an Appeal thereunder. Plaintiffs cause of action under Count Three with respect to M.T.O. 98-2 is therefore dismissed.
Plaintiffs Count Three also alleges that the discriminatory employment practice violated the provisions of the ICRA, 25 U.S.C. Section 1302 et. seq. As to the cause of action alleged in Count Three, it is unclear specifically how this implicates the due process provisions of the Indian Civil Rights Act, 25 U.S.C. Section 1302. Paragraphs 25 and 26 of Plaintiffs Complaint allege that the Plaintiff was dismissed on January 6, 1999 by William Velardo, General Manager, during a meeting for the failure of the Plaintiff to answer questions. Count Three adds the following allegations:
63. On information and belief, Defendant, Michael Stewart, alias, acts were discriminatory in violation of the ordinances of the Mohegan Tribal Gaming Authority ...
66. Said termination of the Plaintiff, is a violation of Mohegan Tribal Ordinance 98-2 and 25 U.S.C. Section 1302 et. seq.
It has been held repeatedly that “simply bringing a constitutional challenge to an agency’s actions will not necessarily excuse a failure to follow an available statutory appeal process.” Johnson v. Department of Public Health, 48 Conn.App. 102, 122, 710 A.2d 176 (1998), quoting LaCroix v. Board of Education, 199 Conn. 70, 79, 505 A.2d 1233 (1986). See Murphy v. Young, 44 Conn.App. 677 n. 7, 692 A.2d 403 (1997) (“The mere allegation of a constitutional violation will not excuse a party’s failure to exhaust available administrative remedies”). It is clear that Count Three is not a collateral attack on the constitutionality of M.T.O. 98-2, but rather seeks the remedies provided therein. For the reasons stated above, Plaintiffs failure to exhaust her administrative remedies deprives this court of jurisdiction over such a claim.
Accordingly, Count Three is dismissed.
C. CONCLUSION.
Defendant’s Motion to Dismiss and/or strike is denied as to Count One, granted in part as to Count Two (except as to Plaintiffs claims pursuant to 25 U.S.C. *424 Section 1302 et. seq., as to which it is denied), and granted as to Count Three.