MEMORANDUM OF DECISION ON DEFENDANT’S MOTION TO DISMISS
MANFREDI, Judge.

BACKGROUND

This case arises out of a complaint filed by the Plaintiff dated November 3, 2003 in which the Plaintiff alleges that she sustained personal injuries in a motor vehicle accident. The accident occurred on May 4, 2003 in the Eagleview employee drop off area/garage on the Mohegan reservation. The Plaintiff stopped her car in the parking area to await a parking space when it was struck by a bus owned by the MTGA and was being driven by Joseph Di-Francesca, an employee of the MTGA.
The Defendant has moved to dismiss the complaint claiming that its sovereign immunity in respect to this claim denies the court jurisdiction over this matter.

APPLICABLE LAW

Section 20 of the Gaming Disputes Court Rules of Civil Procedure indicates that a motion to dismiss shall be used to assert a lack of jurisdiction over subject matter of a claim. Additionally, Ordinance 95-4 “An Ordinance Establishing the Gaming Disputes Court,” Article III, Section 301 states that:
“The substance of law of the Mohegan
Tribe for application by the Gaming Disputes Court shall be:
(a) The law set forth in any Mohegan Tribal Ordinances or Regulations.
(b) The General Statutes of Connecticut, as may be amended from time to time, are hereby adopted as and declared to be the positive law of the Mohegan Tribe for application by the Gaming Disputes Court, except as such statutes are in conflict with Mohegan Tribal Law
*528 (c) The common law of the State of Connecticut interpreting the positive law adopted in Section 301b above, which body of law is hereby adopted as and declared to be the common law of The Mohegan Tribe for application by the Gaming Disputes Court, except as such common law is in conflict with Mohegan Tribal Law.”
“A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.” Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). “A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.” Upson v. State, 190 Conn. 622, 624, 461 A.2d 991 (1983). Subject matter jurisdiction can be raised at any time. Gagnon v. Planning Commission, 222 Conn. 294, 297, 608 A.2d 1181 (1992). Once raised, the issue of subject matter jurisdiction must be resolved before proceeding further with the case. Figueroa v. C & S Ball Bearing, 237 Conn. 1, 4, 675 A.2d 845 (1996).
“[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss.” (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996); Novicki v. New Haven, 47 Conn.App. 734, 739, 709 A.2d 2 (1998).
“In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegation, construing them in a manner most favorable to the pleader.” Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). “The motion to dismiss ... admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone ... where, however ... the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issues and need not conclusively presume the validity of the allegations of the complaint.” (Citation omitted; internal quotation marks omitted.) Barde v. Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988).
The court notes that a critical fact upon which the Motion to Dismiss is based, and upon which the parties agree, is that the Plaintiff, Renee Integlia, was an employee of the Mohegan Tribal Gaming Authority on the date of the accident in question. However, it is also undisputed and agreed to by the parties that at the time of the accident in question, Renee Integlia was not working or performing any act in furtherance of her employment with the Mohegan Tribal Gaming Authority. In fact, she was upon the reservation only to visit the Automated Teller Machine (ATM) in the Eagleview Parking Garage.
Normally, tort claims against the Defendant are brought pursuant to Ordinance 2001-07 An Ordinance Amending Ordinance 98-1 Establishing the Mohegan Torts Code. Section 4(c) of the ordinance establishes procedures for tort claims against the MTGA and “applies to any and all tort claims arising on the Mohegan Reservation that may be brought against the MTGA and its employees, by patrons, invitees, guests, and other persons who have a valid and legitimate reason to be on the reservation or within The Mohegan Tribe’s gaming, hotel, resort, or entertainment facilities.” Section 4(D) and (E) of the Ordinance further provide that:
“D. This code is expressly intended by the Mohegan Tribe and the MTGA to constitute the exclusive means of adjudication of claims brought against the MTGA and its employees, by patrons, *529 invitees, guests and other persons in The Mohegan Tribe and MTGA expressly withhold their consent to suit in any forum other than the Gaming Disputes Court established pursuant to Mohegan Tribal Ordinance 95-4 for such actions. E. This code shall not apply to any claims by employees of the MTGA arising or out of their employment by the MTGA, or from or out of their supervision by MTGA executives, managers, or supervisors. All rights, claims, and remedies of employees of the MTGA are codified elsewhere, and this code contains no waiver of sovereign immunity by either The Mohegan Tribe or the MTGA so as to permit claims arising from any aspect of the employment relationship between the MTGA and its employees, nor does this code constitute a consent by The Mohegan Tribe or the MTGA to be sued by any MTGA employee.”
This case is readily distinguishable from Collins v. MTGA, 1 G.D.R. 108 (2003) where all of the claims arose out of Plaintiffs employment with the MTGA. The issue this case presents then is essentially one of first impression and as the court understands the issue, can be framed as follows.
Have The Mohegan Tribe and the MTGA waived their sovereign immunity in connection with tort claims brought by employees for claims NOT arising out of or from their employment by the MTGA?
Section 303 of Ordinance 95-4 states: “The Gaming Disputes Trial Court and the Gaming Disputes Court of Appeals shall have the authority to further develop through their decisions the Mohegan Tribe common law for the Gaming Disputes Court on any question of law.
In further developing the Tribe’s common law and in deciding the eases before it, the Gaming Disputes Court shall strive to achieve stability, clarity, equity, commercial reasonableness, and fidelity to any applicable Mohegan Tribal ordinances or regulations.”
This court takes note of the Tribal-State Compact between The Mohegan Tribe and the State of Connecticut, Section 3(g) Court Remedies for Patrons:
“The tribe shall establish, prior to the commencement of class III gaming, reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities. The Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Compact, but may adopt a remedial system analogous to that available for similar claims arising against the State or such other remedial system as may be appropriate following consultation with the State gaming agency.”
As indicated, this case presents one of first impression and requires the court to interpret the language of the Mohegan Tort Code in conjunction with the facts of this case.
In Connecticut,
“The process of statutory interpretation involves a reasoned search of the intention of the legislature ... in other words we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.” Bender v. Bender, 258 Conn. 733, 741, 785 A.2d 197 (2001).
Additionally, Connecticut Public Act OS-154 states that:
“The meaning of a statute shall, in the first incidence, be ascertained from the text of the statute itself and its relation *530 ship to other statutes. If, after examining such text and considering such relationship, the meaning of the text is plain and unambiguous and does not yield absurd or unworkable results, extra textual evidence of the meaning of the statute shall not be considered.”
Another principle of statutory interpretation which the court considers important in this case is that “the true interpretation of ambiguous language in a statute may be found by resort to the subject matter. In ascertaining the intent of the legislature, the language of the statute must be read in a sense which harmonizes with the subject matter.” 73 Am. Jar. 2d Statutes, Section 148, Subject Matter.
Finally, as to the issue of sovereign immunity:
Absent “a clear waiver [of immunity] by the tribe or congressional abrogation”, Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), it is clear that Indian Tribes possess the “common law immunity from suit traditionally enjoyed by sovereign powers.” Long v. Mohegan Tribal Gaming Authority, Et Al. 1 G.D.R. 5, 9 (1997), quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670. 1677, 56 L.Ed.2d 106 (1978). “While Indian Tribes can waive their sovereign immunity, ‘such waiver may not be implied, but must be expressed unequivocally.’ ” McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989). Worthen v. MTGA, et al., 1 G.D.R. 64, 2 Am. Tribal Law 410, 2000 WL 35733918 (Mohegan Gaming Trial Ct.2000).

DISCUSSION:

Applying the foregoing principles to the undisputed facts of this case, this court concludes that the Defendants have waived sovereign immunity for claims such as presented by this case and the Motion to : Dismiss is therefore denied.
The Tort Code is a clear and unequivocal waiver of sovereign immunity for “any and all tort claims arising” on the reservation by “patrons, invitees, guests, and other persons who have a valid and legitimate reason to be on the reservation.” This Court is by the Ordinance that created it mandated to strive for “stability, clarity [and] equity” in its decisions. Moreover, the Compact with the State of Connecticut demands tort remedies for patrons that are “analogous” to those against the State.
Plaintiff correctly points out that the term patron in its plain and customary usage includes one who “uses the services” offered by an establishment. Plaintiff was a patron at the time of the incident since she was using or attempting to use the ATM, a service offered by the MTGA.
Section 4.E. of the Torts Code when read as a whole is intended to bar tort claims of employees of the MTGA which arise “from or out of their employment by the MTGA” and not tort claims which'do not have their origin in the employment relationship. This section is “analogous” to the Connecticut Worker’s Compensation Statute which bars tort actions against. employers for claims arising out of or in the course of employment. To interpret this section differently would bar otherwise valid claims by persons against the MTGA merely because of their status as employees, even when that status has no bearing or relation to or the circumstances surrounding the cause of the claim.
Here, the Plaintiff was not working at the time of the accident and therefore has no compensation claim available. However, the driver of the bus, (also an employee of the MTGA), which allegedly caused t he accident would be able to collect compon- *531 sation ior any injuries he sustained in the accident since he was working at the time. It would be incongruous and unjust to leave the Plaintiff with no remedy at all merely because she was employed by the MTGA but was not in the course of her employment at the time, and at the same time permit a recovery by another employee under the Worker’s Compensation Ordinance.
Given that the subject matter of Section 4.E. is claims arising out of employment, the only fair reading of it is that it bars employee tort claims which arise out of their employment. The last sentence which states in part that it does not “constitute a consent” to be sued by an employee must be read in conjunction with the rest of Section 4.E. to mean that it does not constitute consent to be sued by an employee for a tort claim when that claim arises “from or out of their employment by the MTGA.”
For all of the foregoing reasons, this Court concludes that it has jurisdiction over the complaint and the Motion to Dismiss is denied.